## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| TEMBEC INC., TEMBEC INVESTMENTS INC., TEMBEC INDUSTRIES INC., | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | No. 05-CV-2345 (RMC) No. 07-CV-1905 (JDB) |
| UNITED STATES OF AMERICA, et al., | ) ) | |
| Respondents. | ) ) | |

---

### NOTICE OF RELATED CASE

Pursuant to Local Rule 40.5(b)(b)(3), Respondent, the United States of America, hereby notifies the Court of the existence of a related case, Civil Action No. 05-2345 (RMC), brought by Petitioners, Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc. (collectively, "Tembec"). After the related case was voluntarily dismissed, and after the Court denied Tembec's motion to reopen or set aside the Stipulation of Dismissal, Tembec filed the present case, Civil Action No. 07-1905 (JDB). Because the two cases "involv[e] the same parties and relat[e] to the same subject matter," see LR 40.5(a)(4); Collins v. Pension Benefit Guarantee Corp.; 126 F.R.D. 3, 7 (D.D.C. 1989), the present case should be reassigned to Judge Collyer, as "the judge having the earlier case." See LR 40.5(c)(2).

### The Related Case and the Present Case

Tembec commenced the related case on December 7, 2005, and that case was assigned to Judge Collyer. A copy of the Petition to Vacate Arbitration Award filed by Tembec in the related case ("First Petition") is attached hereto as Exhibit A. (Docket No. 1 in C.A. No. 05-2345). By Order dated October 17, 2006, Judge Collyer approved the Stipulation of Dismissal With Prejudice of the related case. (Docket No. 25). By Memorandum Opinion dated April 19,

2007, Judge Collyer denied Tembec's motion to reopen or set aside the Stipulation of Dismissal. (Docket No. 35). A copy of the Memorandum Opinion is attached hereto as Exhibit B.

Tembec commenced the present case on October 19, 2007, and the case was assigned to Judge Bates. A copy of the Petition to Vacate Arbitration Award filed by Tembec in the present case ("Second Petition") is attached hereto as Exhibit C. (Docket No. 1 in C.A. No. 07-1905).

### THE TWO CASES INVOLVE THE SAME PARTIES AND RELATE TO THE SAME SUBJECT MATTER

Both the related case and the present case involve the same parties, namely Tembec and the United States. See Ex. A (First Petition) ¶ 1; Ex. C (Second Petition) ¶ 1. Both cases also relate to the same subject matter, see Collins v. Pension Benefit Guarantee Corp., 126 F.R.D. at 7, namely Tembec's challenge to a September 2005 Consolidation Order by a tribunal constituted under Article 1126 of the North American Free Trade Agreement ("NAFTA tribunal"), which consolidated three similar arbitrations under Chapter Eleven of NAFTA brought against the United States by Canadian softwood lumber companies, including Tembec. See Ex. A ¶ 2; Ex. C ¶ 2; Ex. B (April 19, 2007 Mem. Op.) at 1-2. Tembec's NAFTA Chapter Eleven claim sought to recover "more than $200 million" in compensation, see Ex. A ¶ 6; Ex. C ¶ 8, for harm alleged to have arisen from antidumping, countervailing duty and other determinations by the United States Department of Commerce and the International Trade Commission. See Ex. A ¶¶ 4-6; Ex. C ¶¶ 5-8; Ex. B at 1-2.

In the related case, Tembec sought a court order vacating the NAFTA tribunal's Consolidation Order. See Ex. A ¶¶ 13-16. After the Settlement of Claims Agreement of the Softwood Lumber Agreement 2006 ("SLA") was executed on September 12, 2006, Tembec and the United States filed a Stipulation of Dismissal With Prejudice of the related case on October

12, 2006, which was approved by this Court on October 17, 2006. (Docket No. 25 in C.A. No. 05-2345). See Ex. C ¶ 23. As a result of the SLA, Tembec received $242 million in connection with the dispute underlying its Chapter Eleven claim. See Ex. B at 2; NAFTA Tribunal Order dated July 19, 2007 (copies of relevant portions are attached hereto as Exhibit D) at 4, 15; Ex. C ¶ 21.

After the United States sought legal fees and tribunal costs totaling approximately $270,000 in the NAFTA arbitration proceedings, see Ex. D at 4, 89-90; Ex. C ¶ 27, Tembec filed a motion to reopen or set aside the Stipulation of Dismissal in the related case on November 9, 2006, which was denied by the Court on April 19, 2007. See Ex. B at 1, 9; Ex. C ¶ 29. The NAFTA tribunal then issued an Order dated July 19, 2007, requiring Tembec to pay fees and costs to the United States. See Ex. D at 4, 90; Ex. C ¶ 27.

The Second Petition seeks a court order vacating the NAFTA tribunal's award, "and all of the tribunal's orders leading up to the final arbitration award." Ex. C ¶ 34. The present case and Tembec's First Petition and motion to reopen or set aside the Stipulation of Dismissal in the related case involve Tembec's challenges (a) to the NAFTA tribunal's September 2005 Consolidation Order, (b) the selection of Davis Robinson as one member of the NAFTA Tribunal, and (c) the NAFTA tribunal's authority to award fees and costs to the United States. See Ex. C ¶¶ 9-14, 21-34; Ex. A ¶¶ 7-16; Ex. B at 1-9. Both cases are thus based upon the same underlying facts regarding the arbitration proceedings and the execution of the SLA.

Because both cases involve the same parties and relate to the same subject matter, the present case should be reassigned to Judge Collyer, as "the judge having the earlier case." See LR 40.5(a)(4), 40.5(c)(2); Collins v. Pension Benefit Guarantee Corp., 126 F.R.D. at 8 (ordering reassignment under LR 40.5(a)(4) where the same subject matter was present in both cases).

## CONCLUSION

For these reasons, the United States respectfully requests that the present case be

reassigned to Judge Collyer.

Dated: November 14, 2007                          Respectfully submitted,


                                                  PETER D. KEISLER
Of Counsel:                                       Assistant Attorney General

                                                  JEFFREY A. TAYLOR
                                                  United States Attorney

ANDREA J. MENAKER                                 VINCENT M. GARVEY
*Chief, NAFTA Arbitration Division*               Deputy Branch Director
*Office of International Claims and*
  *Investment Disputes*                            */s/ Peter T. Wechsler*
                                                  PETER T. WECHSLER (MA 550339)
United States Department of State                 Trial Attorney
Washington, D.C. 20520                            U.S. Department of Justice, Civil Division
Office of the Legal Adviser                       Federal Programs Branch
2201 C. Street, N.W.                              Post Office Box 883
Suite 5519                                        Washington, D.C.  20044
                                                  Tel: (202) 514-2705  Fax: (202) 616-8470
                                                  *Attorneys for the United States*


CERTIFICATE OF SERVICE:

I HEREBY CERTIFY that on November 14, 2007, a true copy of the foregoing was sent to Mark
A. Cymrot, BAKER & HOSTETLER LLP, via ECF, and to counsel for Canfor Corporation and
Terminal Forest Products Ltd. by first-class mail to:

        P. John Landry                      Keith Mitchell
        DAVIS & & COMPANY                   HARRIS & COMPANY
        666 Burrard Street                  555 Burrard Street
        Suite 2800 Park Place               14th Floor Bentall 5
        Vancouver, BC                       Vancouver, BC
        Canada V6C 2Z7                      Canada V6C 2Z7


                                            */s/ Peter T. Wechsler*
                                            Peter T. Wechsler

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In the Matter of the Arbitration between )<br><br>TEMBEC INC., TEMBEC INVESTMENTS INC., TEMBEC INDUSTRIES INC. )<br><br>Petitioners, )<br><br>and )<br><br>THE UNITED STATES OF AMERICA, )<br><br>Respondent. ) | Case No._____ |

## PETITION TO VACATE ARBITRATION AWARD

1.    Petitioners, Tembec Inc., Tembec Investments Inc., and Tembec Industries, Inc. ("Tembec"), bring this Petition to Vacate Arbitration Award against Respondent the United States of America ("United States").

2.    With this Petition, Tembec provides Notice to the United States under 9 U.S.C. § 12 that Tembec will file a "Motion to Vacate the Arbitration Award" ("Motion to Vacate"), pursuant to 9 U.S.C. §§ 10 and 12 of the Federal Arbitration Act ("FAA"). In the Motion to Vacate, Petitioner will move for an order vacating the final decision and order of the North American Free Trade Agreement ("NAFTA") Article 1126 tribunal on September 7, 2005 in *Canfor Corporation v. United States of America, Tembec Inc. et al v. United States of America,* in favor of the Government of the United States of America, which unlawfully terminated Tembec's arbitration proceedings under NAFTA Article 1120 ("Award").

3.     This Petition and its accompanying Notice are being filed and served on December 7, 2005, within three months of the NAFTA Article 1126 tribunal's Award, and therefore are timely submitted pursuant to 9 U.S.C. § 12.

4.     Tembec submitted to a NAFTA Article 1120 tribunal claims for arbitration against the United States for violating its obligations to Tembec and its U.S. investments under Chapter 11 of NAFTA.

5.     Tembec alleges in its NAFTA Chapter 11 claims that the United States applied its antidumping and countervailing duty laws to Tembec and its investments in an arbitrary, unfair, and discriminatory manner in violation of Article 1102, 1103, 1105 and 1110 of NAFTA.

6.     Since May 2002, the United States has imposed duties on softwood lumber from Canada that the World Trade Organization and NAFTA appeal tribunals have held to be unlawful under both U.S. and international law. Tembec brought the arbitration proceedings to recover more than $200 million in damages from these unlawful duties.

7.     The NAFTA Article 1120 tribunal was formed on August 4, 2004, to adjudicate Tembec's NAFTA Chapter 11 claims in the matter of *Tembec Inc. et al. v. United States.* Tembec appointed Professor James Crawford of Australia, the United States appointed Professor Kenneth Dam of the United States of America, and ICSID appointed Judge Florentino Feliciano of the Philippines with the consent of both the United States and Tembec. Neither Tembec nor the United States had objections as to any of the Article 1120 tribunal members or the formation of the tribunal.

8.    On the eve of the jurisdictional hearing, the United States sought to terminate the Article 1120 tribunal by submitting a request to ICSID to consolidate Tembec's NAFTA Chapter 11 claims with claims by Canfor Corporation ("Canfor") and Terminal Forest Products Limited ("Terminal"), two other Canadian softwood lumber producers.

9.    ICSID complied with the request despite Tembec's objections that the United States' request had been made too late.  The Article 1126 tribunal stayed Tembec's Article 1120 arbitration proceedings even though the appointment of two of the tribunal members still was subject to challenge under the governing UNCITRAL Rules of Arbitration.

10.    Tembec objected to the appointment of Mr. Davis Robinson to the Article 1126 tribunal on the bases that (a) he is the first cousin to the President of the United States; the President has been personally and directly involved in the softwood lumber dispute with Canada; (b) Mr. Robinson previously served as head of the legal office now representing the United States in the current arbitration; and (c) his selection by ICSID was made from a small list of arbitrators officially appointed by the United States; all of which raised "justifiable doubts" under Article 10 of the UNCITRAL Rules as to his ability to remain impartial and independent.  Mr. Robinson refused to withdraw from the tribunal even though all parties except the United States joined in Tembec's objection.

11.    Thus, one of the three Article 1126 members was selected from a small, pre-screened list of candidates chosen by the United States, even though none of the members of the Article 1126 tribunal had been selected by Tembec.  The Article

1126 tribunal unfairly represented the United States' preferences for arbitrators to determine whether Tembec's Article 1120 arbitration proceedings should be terminated, and to adjudicate Tembec's NAFTA Chapter 11 claims against the United States.

12.    The tribunal refused to stay its own proceedings or lift its stay of Tembec's Article 1120 proceedings while the challenge to Mr. Robinson remained pending.

13.    The Article 1126 tribunal required a hearing and the submission of briefs, then decided on September 7, 2005 to consolidate the claims of Tembec, Canfor and Terminal, to assume jurisdiction over all of the claims, and to terminate Tembec's Article 1120 tribunal. The Article 1126 tribunal's Award was final and conclusive as to the questions of consolidation and termination of Article 1120 proceedings, even though the Article 1126 tribunal is continuing arbitration proceedings as to the substance of NAFTA Chapter 11 claims as to Canfor and Terminal. Tembec has ceased from further participation in the Article 1126 proceedings.

14.    Tembec petitions this Court to vacate and set aside the Award of the Article 1126 tribunal.

## CLAIMS FOR RELIEF

### I.    PETITION TO VACATE AWARD

15.    The Article 1126 tribunal's Award constitutes a final award under 9 U.S.C. § 10 that is appropriate for judicial review. The September 7, 2005 decision and order finally and definitively disposes of the United States' request for consolidation by terminating Tembec's right to proceed with arbitration of its NAFTA Chapter 11 claims before a consensually-appointed Article 1120 tribunal. The Award is a separate and independent claim that is unrelated to the underlying merits of the case. Failure to

4

provide immediate relief for this Award would render any future relief meaningless if judicial review were delayed until the issuance of a final award on the merits by the challenged tribunal.

16.    The Article 1126 tribunal's Award should be vacated for the reasons to be provided in Tembec's Motion to Vacate.  The grounds to be alleged in Tembec's Motion include evidence of partiality among the arbitrators (9 U.S.C. § 10(2)); arbitrator misconduct or misbehavior prejudicing the rights of a party (9 U.S.C. § 10(3)); that the arbitrators exceeded their powers (9 U.S.C. § 10(4)); and the arbitral award is contrary to public policy, an additional ground upon which courts have vacated arbitral awards.

## CONCLUSION

In accordance with 9 U.S.C. § 12, this Petition constitutes "notice of a motion to vacate the arbitration award."  In the Motion to Vacate, Petitioner will move for an order vacating and setting aside the Award of the NAFTA Article 1126 tribunal for the reasons set forth in that motion, in addition to the reasons provided above.

Respectfully submitted,

Elliot J. Feldman (D.C. Bar No. 418501)
Mark A. Cymrot (D.C. Bar No. 164673)
Michael S. Snarr (D.C. Bar No. 474719)
BAKER & HOSTETLER LLP
1050 Connecticut Ave. N.W.
Suite 1100
Washington D.C.  20036-5304
Tel: (202) 861-1679
Fax: (202) 861-1783

Dated:  December 7, 2005          Counsel for Petitioners Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TEMBEC INC.,** *et al.*, | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | )     **Civil Action No. 05-2345 (RMC)** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Respondent. | ) |
| | ) |

**MEMORANDUM OPINION**

   This case was dismissed pursuant to the parties' stipulation after the United States and Canada executed the Softwood Lumber Agreement of 2006 ("SLA"), which, *inter alia*, resolved the antidumping and countervailing duty claims of Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc. ("Tembec") against the United States. Tembec filed a motion to reopen this case titled "Notice of Reinstatement or, In the Alternative, Motion Under Rule 60(b)."[1]  In the motion Tembec seeks to withdraw from the stipulation of dismissal or to set it aside under Rule 60(b)(3) because "[t]he United States knowingly misled Tembec." Reply at 3. The United States opposed the motion. The Court held a hearing on March 23, 2007, and took this matter under advisement. As explained below, the Court finds no evidence that the United States knowingly misled Tembec and no basis to reopen the case. The motion to reopen will be denied.

**I.  BACKGROUND**

   Because U.S. timber interests believed that Canadian companies were "dumping"

---

  [1] Although Tembec implies they have a right to reinstate this action by titling their pleading as a "notice," the pleading in fact is a motion seeking relief from the Court.

cheap timber into U.S. markets, the U.S. Department of Commerce and the International Trade Commission imposed various costs on Canadian imported soft woods through a series of antidumping, countervailing duty, and other determinations. Three Canadian softwood producers – Tembec, Canfor Corporation, and Terminal Forest Products Ltd. – filed claims against the United States under the North American Free Trade Agreement ("NAFTA") Chapter Eleven provisions for arbitration. This case initially concerned Tembec's challenge to a September 2005 Consolidation Order by a tribunal constituted under Article 1126 of NAFTA ("Tribunal"), which consolidated the cases of the three Canadian companies. On December 7, 2005, Tembec informed the Tribunal that it "does not recognize that this Tribunal has lawfully assumed jurisdiction over Tembec's Statement of Claim" and that it was removing its claim from the consolidated proceedings. Tembec filed a petition with this Court on the same day, seeking to vacate the Consolidation Order. The Tribunal released Tembec on January 10, 2006.

While a forest may be silent when no one is there to hear, the softwood lumber dispute between the two countries created an uproar. After lengthy discussions, the United States and Canada signed the Softwood Lumber Agreement ("SLA") on September 12, 2006, and set a target date of October 1, 2006, for making it effective. Certain conditions precedent had to be met before the SLA would come into force. One such condition precedent was that a "Termination of Litigation Agreement" ("TLA") would be signed by all parties to the "Covered Actions" identified specifically in the TLA. The TLA was set forth in Annex 2A of the SLA. It expressly stated that all parties to the Covered Actions would bear their own costs.

The TLA did not meet with universal applause from the parties to the 20-odd disputes it was designed to terminate. Some parties signed; some dithered; some re-wrote parts of the TLA;

and some refused altogether. Tembec chose to attempt to revise the TLA to make it more to its liking, including a provision requiring the Government of Canada to pay Tembec 90% of what it was due under the SLA no later than 60 days after the SLA became effective. On September 20, 2006, Tembec signed and submitted individual copies of its revised TLA, separately providing for the settlement of the 11 Covered Actions to which it was a party, including its NAFTA arbitration claim and this lawsuit.

When it became apparent to Canada and the United States that the conditions precedent would not all be met by the target effective date for the SLA, those parties extended that date to no-later-than November 1, 2006. The two governments also negotiated modifications to the SLA to change some of the conditions precedent so that the SLA could go into force by November 1. As a result, the TLA was replaced with a more limited Settlement of Claims Agreement ("SCA") that addressed the termination of only four actions, including Canfor's NAFTA Chapter Eleven claim before the Tribunal and this lawsuit. Tembec's NAFTA Chapter Eleven claim was not listed. According to Tembec, counsel for Canada presented the SCA to Tembec at 6:00 P.M. on October 11, 2006, and Tembec was "informed by Canada's counsel that if the SCA were not executed that night . . . , Tembec would be the cause of the failure of the SLA negotiations." Reply at 3. *See also* Reply at 16 ("Knowing that Tembec had endorsed the Softwood Lumber Agreement, the Government of Canada advised that the agreement would not go forward without counsel's immediate signature.").

In the meantime, counsel for the United States and Tembec had been negotiating a stipulated dismissal of this lawsuit. On October 12, 2006, Tembec and the United States filed a stipulation of dismissal, agreeing to dismiss this action "with prejudice, subject to the terms of the

conditions of the Softwood Lumber Agreement of 2006." Stipulation of Dismissal [Dkt. # 25]

(hereinafter "Stipulation of Dismissal"). The following day, the United States took the position

before the Tribunal that Tembec should bear the entire cost of Tembec's NAFTA Claim, including

the United States' attorneys' fees. Tembec objected, and now seeks to set aside the Stipulation of

Dismissal and reopen this case.

## II.  ANALYSIS

### A.  Stipulation of Dismissal

Tembec first relies on the language of the Stipulation of Dismissal, arguing that the

Stipulation was expressly subject to the terms of the SLA, the SLA was changed without Tembec's

agreement or knowledge in a way that allows the United States to seek costs from Tembec, and thus

Tembec should not be bound by the Stipulation. This argument holds no water because Tembec is

bound by the plain meaning of the Stipulation of Dismissal. When presented with a contract, the

duty of a court is to give effect to the mutual intentions of the parties. *NRM Corp. v. Hercules Inc.*,

758 F.2d 676, 681 (D.C. Cir. 1985). "Where the language of a contract is clear and unambiguous

on its face, a court will assume that the meaning ordinarily ascribed to those words reflects the

intentions of the parties. Only if the court determines as a matter of law that the agreement is

ambiguous will it look to extrinsic evidence of intent to guide the interpretive process." *Id*. at 681-

82 (citations omitted) (applying federal common law which "dovetails precisely with general

principles of contract law"); *accord Mittal Steel USA ISG, Inc. v. Bodman*, 435 F. Supp. 2d 106, 108-

09 (D.D.C. 2006) (applying general principals of contract law adopted by D.C. law).

The Stipulation of Dismissal is unambiguous; it states that it is "subject to the terms

and conditions of the Softwood Lumber Agreement [SLA] of 2006." It does not state "subject to

the terms of the SLA *as known to Tembec*." Like the Stipulation, the SLA also is unambiguous. It expressly incorporates the terms of the SCA, not the TLA.[2] *See* Resp.'s Opp'n Ex. E, Amendment to the SLA, Art. XI (substitutes the SCA for the TLA at Annex 2A). Paragraph 8 of the SCA provides that "[n]o party to this Claims Settlement Agreement shall seek to hold any other party liable to pay its costs and expenses of litigation relating to any action referenced in this Claims Settlement Agreement." *Id*. Ex. E, SCA ¶ 8. Because Tembec's NAFTA Claim is not referenced in the SCA, it is not subject to the paragraph 8 limitation. The Stipulation of Dismissal, the SLA, and the SCA are clear and unambiguous; they do not preclude the United States from seeking costs related to Tembec's NAFTA Claim.

Tembec contends that the United States knowingly misled Tembec. Tembec argues that the SCA signed by Tembec was not labeled "Annex 2A" at the time of Tembec's signature. If it had been, Tembec implies, Tembec would have been on notice that the SCA replaced the TLA. Because it was not, Tembec claims it was misled into believing that the SCA supplemented, but did not replace, the TLA.

Tembec has not submitted clear and convincing evidence of fraud or misconduct by the United States. First, Canada presented the SCA to Tembec for signature, not the United States. The United States had no reason to know whether or to what extent Canada was sharing information with stakeholders like Tembec. Second, the United States had no duty to explain the terms of the

---

[2] It is uncontested that Tembec revised the TLA, Tembec executed this revised version, and the United States did not execute the TLA. There was no meeting of the minds, and thus the TLA never became a binding contract. *Ekedahl v. COREStaff, Inc.*, 183 F.3d 855, 858 (D.C. Cir. 1999) (applying D.C. law, court noted that party asserting existence of enforceable contract has the burden of proving there has been an agreement, a meeting of the minds).

-5-

SLA or the SCA to Canada, with whom it was negotiating,[3] let alone to Tembec. *See Capital Yacht Club v. VESSEL AVIVA*, 409 F. Supp. 2d 1, 7 (D.D.C. 2006) ("defendants have no duty to inform the plaintiff's attorney of the legal consequences" of signing a document).

Third, Tembec's argument that it believed that the SCA supplemented the TLA, and did not replace it, is disingenuous because Tembec should have known that the TLA was replaced by the SCA. Tembec had the opportunity to review the SCA, which is only two pages long, before signing it. Resp. to Petrs.' Supp. Brief Ex. A, Tr. of 1/31/07 Hearing before Tribunal at 78-84. Tembec was at all times represented by counsel. In fact, Tembec's counsel reviewed the SCA and suggested "very modest" changes. *See* Petrs.' Mot. Ex. E, Oct. 11, 2006 Letter from Tembec's Counsel. Tembec's NAFTA Claim plainly was not referenced by the SCA, and Tembec did not question this.

Fourth, it is unreasonable to interpret the SCA as supplemental to the TLA because the two agreements covered some of the same cases, like Canfor's Chapter Eleven claim and Tembec's district court case, and there would be no need to reference the same cases in the SCA if it merely supplemented the TLA.[4] Finally, Tembec was notified by a confidential Canadian source

---

[3] With its supplemental brief, Tembec submitted a letter from Andrea Lyon, Canada's Chief Trade Negotiator. The letter explains Ms. Lyon's interpretation of the SLA, the TLA, and the SCA. She indicates that while the TLA replaced the SCA, the SCA covers Tembec's NAFTA Claim because it covers the consolidated NAFTA claims. Ms. Lyon is in error, as she overlooks the fact that Tembec had previously withdrawn its arbitration claim from the consolidated action. Because Tembec had withdrawn, its NAFTA Claim was not covered by the SCA. Moreover, Ms. Lyon's interpretation of the SLA is not relevant. The Stipulation of Dismissal and the SLA must be construed according to their plain meaning, and the Court does not consider extrinsic evidence of the parties' intent.

[4] The TLA and the SCA also covered some of the same actions, but treated them differently. For example, the case captioned *Coalition for Fair Lumber Imports Executive Committee v. U.S.*, No. 05-1366 (D.C. Cir.), is terminated under the TLA. Petrs.' Mot. Ex. A,

that the U.S. and Canadian governments "could not satisfy certain conditions of the TLA as a condition precedent to the SLA's entry into force, and that they would take other action enabling entry into force, including a possible substitution of the SCA." Petrs.' Supp. Brief at 4 n.1.

Tembec executed the SCA, and it negotiated the Stipulation of Dismissal in this case thereafter. Pet.'s Mot. Ex. F. Tembec initially objected to the proposed stipulation and suggested revisions. *Id.* Counsel for the United States sent an email explaining various revisions and confirming that the Stipulation of Dismissal was pursuant to the SLA. *Id.* After further emails, counsel for both parties agreed to the Stipulation as it was filed with this Court on October 12, 2006. In sum, Tembec is bound by the plain and express terms of the Stipulation of Dismissal, subject to the unambiguous terms of the SLA (including the SCA). Under these agreements, the United States is not barred from seeking attorneys' fees and costs against Tembec.

Tembec also contends that "the United States and Canada agreed that no party would seek costs or fees against any other party in any of the litigation involving softwood lumber from Canada." Petrs.' Notice of Filing [Dkt. # 33].[5] In support of this claim, Tembec submitted documents indicating that the United States has agreed not to seek costs or fees against West Fraser Mills in settlement negotiations with that company. *See West Fraser Mills Ltd. v. United States*, CIT No. 05-79 (pending in the U.S. Court of International Trade). Similarly, Tembec asserts that the United States agreed not to seek cost or fees in settlement of Canfor's Chapter 11 claim or in settlement of Terminal Forest Products' Chapter 11 claim. Petrs.' Notice of Filing [Dkt. # 33] at 1.

---

TLA at ¶¶ 1-3. Under the SCA, the United States and Canada merely agree to seek dismissal of the same case. Resp.'s Opp'n Ex. E, SCA ¶ 2.

[5] Tembec made this argument at the hearing on this matter, and the Court permitted a supplemental filing.

The fact that other parties were treated differently in other cases is not relevant to the interpretation

of the governing documents in this case — the Stipulation of Dismissal, the SLA, or the SCA.[6]

Moreover, because the Stipulation of Dismissal, the SLA, and the SCA are clear and unambiguous,

the Court must give effect to the intent of the parties and may not examine extrinsic evidence. *NRM*

*Corp.*, 758 F.2d at 681-82.   No matter what the agreements were in other cases, the relevant

documents in this case do not preclude the United States from seeking fees and costs against Tembec

related to Tembec's NAFTA claim.

### B.  Request to Set Aside the Judgment under Rule 60(b)(3)

Federal Rule of Civil Procedure 60(b) provides for motions for relief from a judgment

or order due to: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered

evidence; (3) fraud, misrepresentation, or other misconduct; (4) void judgment; (5) satisfied,

released, or discharged judgment; or (6) "any other reason justifying relief from the operation of the

judgment." Fed. R. Civ. P.  60(b).  Tembec moves to set aside the judgment here due to "fraud,

misrepresentation, or other misconduct" under Rule 60(b)(3).

In order to prevail under Rule 60(b)(3), Tembec must establish fraud or misconduct,

and resulting actual prejudice, by clear and convincing evidence. *Johnson v. Holway*, 2006 WL

3201877, *1 (D.D.C. Nov. 6, 2006).  The burden of proof is high because public policy supports

protecting the finality of judgments. *Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir.

---

[6] Canfor and West Fraser's claims were both listed in the SCA and thus both were subject to the cost and fees limitation set forth in paragraph 8 of the SCA.  *See* Resp.'s Opp'n Ex. E, SCA ¶1 (Canfor), ¶ 5 (West Fraser), ¶ 8 (cost and fees limitation).  The settlement of Terminal Forest Products' claim was not covered by the SCA, but was settled separately.  Treating these claims in a manner consistent with the terms of the SCA, or in Terminal's case in a manner consistent with the parties' settlement agreement, is not inconsistent with the United States' treatment of Tembec in this case.

2004). "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann v. United States*, 340 U.S. 193, 198 (1950).[7]

Tembec cannot meet this high standard. As described above, Tembec revised the TLA that Canada presented to it and signed the revised version. There is simply no evidence that the United States led Tembec to believe the United States had accepted the revised TLA. Like the TLA, Canada (not the United States) presented the SCA to Tembec. Based on a review of the SCA by Tembec's counsel and information from a confidential Canadian informant, Tembec had reason to know that the SCA replaced the TLA. Thus, Tembec must be charged with knowledge of the plain terms of the SLA and the SCA. Tembec has not met its burden under Rule 60(b)(3) of demonstrating fraud or misconduct by the United States by clear and convincing evidence.

### III.  CONCLUSION

For the foregoing reasons, the Court will deny Tembec's motion for reinstatement or to set aside judgment under Rule 60(b) [Dkt. # 26]. The unambiguous terms of the Stipulation of Dismissal are binding. A memorializing order accompanies this Memorandum Opinion.

Date: April 19, 2007                                   /s/
                                             ROSEMARY M. COLLYER
                                             United States District Judge

---

[7] Tembec does not request relief under the catch all provision, Federal Rule of Civil Procedure 60(b)(6) (relief from judgment may be granted for "any other reason justifying relief from the operation of judgment"). Even if it had, such relief would be inappropriate because Rule 60(b)(6) applies only in extraordinary circumstances. *Kramer v. Gates*, No. 05-5385, slip op. at 6 (D.C. Cir. Mar. 6, 2007) (citing *Ackermann*, 340 U.S. at 199). "Rule 60(b)(6) 'should be only sparingly used' and may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.'" *Kramer*, slip op. at 7 (quotations omitted) (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)).

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

In the Matter of the Arbitration between )
)
TEMBEC INC., TEMBEC INVESTMENTS )
INC., and TEMBEC INDUSTRIES INC. )
)
800 René Lévesque Boulevard Ouest )
Suite 1050 )
Montréal, Québec H3B 1X9 )
)
               Petitioners, )    Case No._____
     and )
)
THE UNITED STATES OF AMERICA; )
CANFOR CORPORATION; and TERMINAL )
FOREST PRODUCTS LTD. )
)
              Respondents. )

---

## <u>PETITION TO VACATE ARBITRATION AWARD</u>

     1.    Petitioners, Tembec Inc., Tembec Investments Inc., and Tembec

Industries, Inc. ("Tembec"), located at 800 René Lévesque Boulevard Ouest, Suite

1050, Montréal, Québec H3B 1X9, bring this Petition to vacate an arbitration award

issued against Tembec in favor of the United States of America ("United States"),

Canfor Corporation ("Canfor"), and Terminal Forest Products Limited ("Terminal")

(collectively the "Respondents") in accordance with 9 U.S.C. § 1 et seq.

     2.    Tembec provided a "Notice Of Filing Of Petition To Vacate

Arbitration Award" to the Respondents, which notified Respondents in accordance with

9 U.S.C. § 12 that Tembec will file a "Motion to Vacate the Arbitration Award" ("Motion

to Vacate"), pursuant to 9 U.S.C. §§ 10 and 12 of the Federal Arbitration Act ("FAA"). In

the Motion to Vacate, Petitioner will move for an order vacating the final award of the

North American Free Trade Agreement ("NAFTA") Article 1126 tribunal delivered on August 2, 2007 in *Canfor Corporation v. United States of America, Tembec Inc. et al v. United States of America, and Terminal Forest Products Ltd. v. United States of America* in favor of the Respondents (the "Award").

      3.    Tembec respectfully requests that the Court convene a status conference within thirty days of the filing of this Petition in order to set a briefing schedule for filing and responses to Tembec's Motion to Vacate.

      4.    This Petition and its accompanying Notice were filed and served on October 19, 2007, less than three months from the delivery of the Award, and therefore were timely submitted pursuant to 9 U.S.C. § 12.

## FACTUAL BACKGROUND

      5.    Tembec submitted to a NAFTA Article 1120 tribunal claims for arbitration against the United States for violating its obligations to Tembec and its U.S. investments under Chapter 11 of NAFTA.

      6.    Tembec alleged in its NAFTA Chapter 11 claims that the United States applied its antidumping and countervailing duty laws to Tembec and its investments in an arbitrary, unfair, and discriminatory manner in violation of Articles 1102, 1103, 1105 and 1110 of NAFTA.

      7.    The United States' breached its NAFTA Chapter 11 obligations to Tembec when, on May 22, 2002, it issued unlawful antidumping and countervailing duty orders on softwood lumber imported from Canada, authorizing the collection of duty deposits ranging up to 29% *ad valorem*.

8.      The collection of these duty deposits was found to be unlawful by the World Trade Organization, NAFTA appeal tribunals and the U.S. Court of International Trade.  Tembec initiated the arbitration proceedings to recover more than $200 million in damages caused to Tembec and its investments by these unlawful duties.

9.      At Tembec's request, a NAFTA Article 1120 tribunal was formed on August 4, 2004, to adjudicate Tembec's NAFTA Chapter 11 claims in the matter of *Tembec Inc. et al. v. United States*.  Tembec appointed Professor James Crawford of Australia, the United States appointed Professor Kenneth Dam of the United States of America, and ICSID appointed Judge Florentino Feliciano of the Philippines with the consent of both the United States and Tembec.  Neither Tembec nor the United States had objections as to any of the Article 1120 tribunal members or the formation of the tribunal.

10.     On the eve of the jurisdictional hearing, the United States sought to terminate the Article 1120 tribunal by submitting a request to the International Centre for the Settlement of Investment Disputes ("ICSID") to consolidate Tembec's NAFTA Chapter 11 claims with claims by Canfor and Terminal, two other Canadian softwood lumber producers.

11.     ICSID complied with the request for consolidation despite Tembec's objections that the United States' request had been made too late, was inconsistent with past practice, and was inappropriate considering the differences in the cases.  ICSID appointed a new Article 1126 "consolidation" tribunal who stayed Tembec's Article 1120 arbitration proceedings, even though the appointment of two of the Article 1126 tribunal

3

members still was subject to challenge under the governing UNCITRAL Rules of Arbitration. The Article 1126 tribunal violated the UNCITRAL Rules when it proceeded with the arbitration while the arbitrators were subject to challenge by the parties.

12.    Tembec objected to the appointment of Mr. Davis Robinson to the Article 1126 tribunal on the bases that (a) his wife is a Walker and near cousin to the President of the United States, and the President has been personally and directly involved in the softwood lumber actions against Canada; (b) Mr. Robinson previously served as head of the legal office representing the United States in the arbitration; and (c) his selection by ICSID was made from a small list of arbitrators officially appointed by the United States. These factors raised "justifiable doubts" under Article 10 of the UNCITRAL Rules as to Mr. Robinson's ability to remain impartial and independent in adjudicating Tembec's claims against the United States.

13.    Tembec requested that Mr. Robinson withdraw from the Article 1126 tribunal, and was joined in that request by Canfor and Terminal. Mr. Robinson, however, refused to withdraw from the tribunal even though all parties except the United States had objected.

14.    Mr. Robinson had been selected for the Article 1126 tribunal by ICSID from a small, pre-screened list of candidates chosen by the United States, even though none of the members of the Article 1126 tribunal had been selected by Tembec. The Article 1126 tribunal unfairly represented the United States' preferences for arbitrators to determine whether Tembec's Article 1120 arbitration proceedings should be terminated, and to adjudicate Tembec's NAFTA Chapter 11 claims against the United States.

15.    The Article 1126 tribunal refused to stay its own proceedings or lift its stay of Tembec's Article 1120 proceedings while the challenge to Mr. Robinson remained pending.

16.    The Article 1126 tribunal required a hearing and the submission of briefs, then decided on September 7, 2005 to consolidate the claims of Tembec, Canfor and Terminal, to assume jurisdiction over all of the claims, and to terminate Tembec's Article 1120 tribunal.

17.    Tembec saw that it would be futile to proceed with its claims before the biased Article 1126 tribunal and requested, pursuant to Article 34 of the UNCITRAL Rules, that the consolidated arbitration proceedings be terminated with respect to Tembec.

18.    At the same time, Tembec initiated an action in the U.S. District Court for the District of Columbia seeking to vacate the Article 1126 tribunal's September 7, 2005 decision to consolidate the claims of Tembec, Canfor and Terminal against the United States and to terminate Tembec's Article 1120 tribunal.

19.    The United States objected to Tembec's request and sought to keep Tembec in the consolidated proceedings so that the Article 1126 tribunal could issue a decision against Tembec.

20.    On January 10, 2006, the tribunal granted Tembec's request to terminate the proceedings and concluded that it did not have authority to rule whether the termination was with or without prejudice to Tembec's claims.  In its order, the tribunal said that it would not decide the allocation of arbitration costs until a later date.

21.     During the summer of 2006, as Canadian softwood lumber companies continued to win legal victories against the United States concerning the unlawfulness of the antidumping and countervailing duty orders, the United States and Canada reached an agreement intended to settle all of the claims against the United States.  Pursuant to the 2006 Softwood Lumber Agreement ("SLA"), the United States refunded all of the five billion dollars of antidumping and countervailing duty deposits collected on softwood lumber, and Canada returned one billion dollars of those deposits to the United States and the U.S. lumber industry.

22.     Canada and the United States also agreed that all of the pending softwood lumber litigation (more than thirty separate cases involving hundreds of Canadian companies) would be terminated without costs or fees to be claimed by either side.

23.     In accordance with these SLA terms, Tembec stipulated, in an agreement with the United States, to dismiss its action in U.S. District Court for the District of Columbia to vacate the Article 1126 tribunal's September 7, 2005 consolidation award prior to any decision being issued on the merits.

24.     Subsequently however, the United States contended that Tembec's NAFTA Chapter 11 claim was the sole exception to the SLA, which was represented to be a universal settlement agreement, and pressed its claim for arbitration costs from Tembec before the NAFTA Article 1126 tribunal.

25.     Tembec submitted evidence to the tribunal that the United States was not entitled to claim costs of arbitration under the SLA from Tembec or any other Canadian party to the softwood lumber litigation, and even provided a statement from

the Government of Canada confirming that there never was any intention to expose Tembec uniquely to a U.S. claim for costs and legal fees.

26.    Tembec also pointed out that the United States should not be entitled to recover its costs of arbitration when there never had been any briefing on the substance of Tembec's claims and the Article 1126 tribunal already had declared that it had no authority to declare Tembec's removal from the proceedings "with prejudice."

27.    Not only did the Article 1126 tribunal accept all of the United States' demands for costs from Tembec, but the tribunal also entered an award requiring Tembec to pay additional costs to Canfor and Terminal, which had never requested a cost award against Tembec.  On August 2, 2007, the tribunal delivered an award ordering Tembec to pay $271,844.24 to the United States, and $32,628.15 to each of Canfor and Terminal.

28.    The United States did not seek any arbitration costs or legal fees from Canfor or Terminal, neither of whom challenged the Article 1126 tribunal's authority in U.S. court, nor were they required by the tribunal to pay any arbitration costs or legal fees to the United States even though they continued to litigate their claims against the United States before the tribunal long after Tembec had removed itself from the proceedings.

29.    Tembec asked the U.S. District Court to nullify its stipulation to dismiss the action to vacate the September 7, 2005 consolidation award based on the misrepresentations by the United States that the SLA settled all softwood lumber claims, including Tembec's NAFTA Chapter 11 arbitration.  The court denied Tembec's request.  The Award of costs and fees followed.

7

30.     Thus, the Article 1126 tribunal's Award of costs and fees leaves Tembec in the unique position of being the only one of hundreds of Canadian lumber companies charged with paying the United States' costs and legal fees arising in connection with any and all aspects of the softwood lumber dispute.

31.     The Award against Tembec was rendered by a tribunal of arbitrators which included a near cousin of the President of the United States, Tembec's opponent in arbitration, who had been legal counsel to Tembec's opponent, had enjoyed patronage appointments from the President's father, and had been pre-screened for approval by Tembec's opponent while no comparable opportunity had been provided to Tembec.

32.     Tembec was the only Canadian company in the NAFTA Chapter 11 proceedings to challenge the authority of the tribunal, and the only company that the tribunal subjected to a punitive award of costs in favor of the United States.

### CLAIM FOR RELIEF

## I.    PETITION TO VACATE AWARD

33.     The Article 1126 tribunal's Award constitutes a final award under 9 U.S.C. § 10 that is appropriate for judicial review.

34.     The Court should find that the Article 1126 tribunal had no authority to conduct the consolidated NAFTA Chapter 11 arbitration proceedings.  The grounds to be alleged in Tembec's Motion to Vacate will include evidence of partiality among the arbitrators (9 U.S.C. § 10(2)); arbitrator misconduct or misbehavior prejudicing the rights of a party (9 U.S.C. § 10(3)); that the arbitrators exceeded their powers (9 U.S.C. § 10(4)); and the arbitral award is contrary to public policy, an additional ground upon which courts have vacated arbitral awards.  For these reasons, the Article 1126

tribunal's Award, and all of the tribunal's orders leading up to the final arbitration award, should be vacated.

## CONCLUSION

In accordance with 9 U.S.C. § 12, Petitioner has provided "notice of a motion to vacate the arbitration award." In the Motion to Vacate, Petitioner will move for an order vacating and setting aside the Award of the NAFTA Article 1126 tribunal for the reasons set forth in that motion, in addition to the reasons provided above.

Respectfully submitted,

Mark A. Cymrot (D.C. Bar No. 164673)
Elliot J. Feldman (D.C. Bar No. 418501)
Michael S. Snarr (D.C. Bar No. 474719)
BAKER & HOSTETLER LLP
1050 Connecticut Ave. N.W.
Suite 1100
Washington D.C. 20036-5304
Tel: (202) 861-1679
Fax: (202) 861-1783

Dated: October 19, 2007     Counsel for Petitioners Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc.

In the Consolidated Arbitration Pursuant to Article 1126
of the North American Free Trade Agreement (NAFTA)
and the UNCITRAL Arbitration Rules
between


CANFOR CORPORATION
v.
UNITED STATES OF AMERICA


TEMBEC *ET AL.*
v.
UNITED STATES OF AMERICA


AND


TERMINAL FOREST PRODUCTS LTD.
v.
UNITED STATES OF AMERICA


JOINT ORDER
ON THE
COSTS OF ARBITRATION
AND FOR THE
TERMINATION OF CERTAIN ARBITRAL PROCEEDINGS


Before the Arbitral Tribunal established under Article 1126 of the NAFTA and
comprised of:

Professor Armand L.C. de Mestral, Arbitrator
Davis R. Robinson, Esq., Arbitrator
Professor Albert Jan van den Berg, Presiding Arbitrator

Secretary of the Tribunal:
Mr. Gonzalo Flores, ICSID

Washington, D.C., 19 July 2007

I.    <u>INTRODUCTION</u>

1.    To consider and decide on costs in international arbitration is a relatively simple exercise. Not so in this case. The controversy between Claimant Tembec, Inc., Tembec Investments, Inc., and Tembec Industries, Inc. (together, "Tembec") and Respondent United States of America (the "United States") over the allocation of costs has consumed unusual amounts of time and energy, not only by the two parties but by the Tribunal as well.

2.    The allocation of costs as between Claimants Canfor Corporation ("Canfor") and Terminal Forest Products Ltd. ("Terminal") and Respondent United States, on the other hand, is a more mundane affair not only because of the express terms of the 12 October 2006 Softwood Lumber Agreement between the Governments of Canada and the United States and an annex thereto but also because of the actions subsequently taken by Canfor, Terminal and the United States, all as more fully explained in this Joint Order.

3.    The costs debate between Tembec and the United States has required not less than four rounds of written submissions, a questionnaire of the Tribunal with more than twenty-five questions, answers by these two parties to those questions, and a separate hearing on the subject. That extensive pleading between the two may seem surprising in light of the amount of legal costs claimed by the United States: to wit, some US$ 150,000 (not including reimbursement of its advances on costs). This amount may be contrasted with the US$ 242 million that was paid to Tembec within less than three weeks after the Softwood Lumber Agreement entered into force on 12 October 2006. However, the United States submits that this contentious issue between Tembec and the United States constitutes a matter of principle: the United States argues that it is entitled to costs "because Tembec abandoned its claim on the eve of the jurisdictional hearing . . . ," and that the failure to award costs in favour of the United States under the circumstances

4

"would open the door to abusive tactics by future Chapter Eleven claimants."[1] The issue also involves grave accusations by these two parties against each other. The United States contends that Tembec has misled the Tribunal, while Tembec asserts misrepresentation, undue influence, duress, coercion, and bad faith by the United States. Those circumstances and accusations have thereby necessitated an order on costs of an extraordinary length.

4.      As an introductory matter, the Tribunal notes that, by its Order of 10 January 2006, the Tribunal terminated these NAFTA Article 1126 consolidated proceedings with respect to Claimant Tembec, save for the costs of arbitration, as further described herein. Thus, this final Joint Order of the Tribunal constitutes both (i) an order for the termination of the arbitral proceedings with respect to the other two Claimants, Canfor and Terminal, as well as with respect to the Respondent, the United States, and (ii) an order on the allocation of the costs of the consolidated arbitration with respect to the three Claimants and the Respondent.

## II.    RELEVANT COSTS PROVISIONS OF THE UNCITRAL ARBITRATION RULES

5.      Before addressing the facts and procedure, it is useful to quote at the outset the relevant provisions contained in Articles 38 to 40 ("Costs") of the UNCITRAL Arbitration Rules:

### Article 38

The arbitral tribunal shall fix the costs of arbitration in its award. The term "costs" includes only:

(a)   The fees of the arbitral tribunal to be stated separately as to each arbitrator and to be fixed by the tribunal itself in accordance with article 39;

---

[1]      United States submission of 4 December 2006 at p. 10.

5

20.     Paragraph 5 of the TLA provided:

> No party to this Termination Agreement shall seek to hold any
> other party liable to pay its costs and expenses of litigation
> relating to the Covered Actions.

21.     In the letter of 8 September 2006, the recipients were asked to do, *inter alia*, the
following:

> You are either counsel for, or an authorized representative of,
> one or more parties or participants to one or more Covered
> Actions. The TLA, two copies of which are enclosed, therefore
> provides a designated line for your signature. We ask that you
> indicate you client's (or clients') agreement to the termination of
> the actions to which they are a party by signing and dating, on
> the line above your name, each copy of the TLA and returning
> your signature pages to the Government of Canada and the
> Government of the United States. (In accordance with paragraph
> 12 of the TLA, it is being signed in counterpart.)

22.     On 12 September 2006, Canada and the United States executed the SLA 2006.[13]
As mentioned above, Article II ("Entry into force") provided in relevant part:

> 1.   The SLA 2006 shall enter into force on a date designated by
> the Parties in an exchange of letters (the "Effective Date"). The
> exchange of letters shall confirm that:
>
> (a)  the Termination of Litigation Agreement in Annex 2A has
> been signed:
>
> (i)  by counsel on behalf of all represented parties and
> participants to the actions set out in the Termination Agreement,
> and
>
> (ii)  by authorized representatives of any unrepresented parties
> or participants to the actions set out in the Termination
> Agreement;

---

[13]     Annex (i) to the Unites States' letter to the Tribunal of 16 November 2006; *see* ¶ 60 *infra*.
Available online at: http://www.international.gc.ca/eicb/softwood/pdfs/SLA-en.pdf.

15

**XII.    DECISIONS**

For the foregoing reasons, the Tribunal renders the following decisions:

(1)  TERMINATES (i) the present proceedings with respect to Canfor, Terminal and the United States, and (ii) the proceedings with respect to Tembec insofar as costs are concerned, the latter proceedings having already been terminated in all other respects by the Tribunal's Termination Order of 10 January 2006;

(2)  DETERMINES that Canfor, Terminal and the United States bear their own costs pursuant to their respective agreements;

(3)  DETERMINES that Tembec shall have to bear the costs of arbitration referred to in Articles 38 and 39 of the UNCITRAL Arbitration Rules insofar as it concerns the NAFTA Article 1120 and Article 1126 proceedings between it and the United States;

(4)  NOTES that the fees and expenses of the Article 1120 Tribunal in *Canfor*, which amount to US$ 372,623.25, and the fees and expenses of the Article 1120 Tribunal in *Tembec* and ICSID's administrative charges in the latter proceedings, which amount to US$ 34,329.15, have been paid out of the advances made by Canfor, Tembec and the United States, the surplus having been refunded to Canfor, Tembec and the United States;

(5)  NOTES that the fees and expenses of the Article 1126 Tribunal and the administrative charges of ICSID, which amount to US$ 995,509.59, have been paid out of the advances made by Canfor, Tembec, Terminal and the United States, the surplus of which (US$ 4,490.41) shall be refunded by ICSID to Canfor (20%), Tembec (10%), Terminal (20%) and the United States (50%);

(6) NOTES that Canfor, Terminal and the United States have advanced more than their respective share of such costs as determined in this Joint Order with respect to all parties, to the effect that Tembec owes Canfor and Terminal US$ 32,628.15 each and the United States US$ 164,807.25;

(7) ORDERS Tembec to pay Canfor and Terminal US$ 32,628.15 each for the costs referred to in Decision (6) above, within 15 (fifteen) days after the date of notification of this Joint Order; and

(8) ORDERS Tembec to pay the United States US$ 271,844.24, which amount comprises US$ 12,316.31 for the NAFTA Article 1120 proceedings, US$ 94,720.68 for legal costs in both the Article 1120 and the Article 1126 proceedings and US$ 164,807.25 for the costs referred to in Decision (6) above, within 15 (fifteen) days after the date of notification of this Joint Order.

90

Made in Washington, D.C., this 19th of July 2007,


THE TRIBUNAL:


_____[s]_____          _____[s]_____
Professor Armand L.C. de Mestral                    Davis R. Robinson, Esq.
            Arbitrator                                          Arbitrator


                    _____[s]_____
                    Professor Albert Jan van den Berg
                            Presiding Arbitrator


91