# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————
                                            )
TEMBEC INC., TEMBEC INVESTMENTS    )
INC., and TEMBEC INDUSTRIES INC.,         )
                                            )
        Petitioners,            )
                                            )
      v.                              )         No. 07-CV-1905 (RMC)
                                            )
UNITED STATES OF AMERICA, <u>et al</u>.,   )
                                            )
        Respondents.           )
—————————————————————)

## UNITED STATES' MOTION TO DISMISS THE PETITION

The United States hereby moves to dismiss the Petition to Vacate Arbitration Award,

with prejudice, on the grounds of collateral estoppel and res judicata.

Dated: January 30, 2008                    Respectfully submitted,


                                            PETER D. KEISLER
                                            Assistant Attorney General

Of Counsel:
                                            JEFFREY A. TAYLOR
                                            United States Attorney


ANDREA J. MENAKER                          VINCENT M. GARVEY
*Chief, NAFTA Arbitration Division*        Deputy Branch Director
*Office of International Claims and*
  *Investment Disputes*                      */s/ Peter T. Wechsler*
                                            PETER T. WECHSLER (MA 550339)
United States Department of State          Trial Attorney
Office of the Legal Adviser                U.S. Department of Justice, Civil Division
2201 C. Street, N.W.                       Federal Programs Branch
Suite 5519                                 Post Office Box 883
Washington, D.C. 20520                     Washington, D.C.  20044
                                           Tel: (202) 514-2705  Fax: (202) 616-8470
                                              *Attorneys for the United States*

<u>CERTIFICATE OF SERVICE</u>:

I HEREBY CERTIFY that on January 30, 2008, a true copy of the foregoing Motion to Dismiss the Petition was served on petitioner's counsel, Mark A. Cymrot, BAKER & HOSTETLER LLP, via ECF, and upon counsel for Canfor Corporation and Terminal Forest Products Ltd. by first-class mail to:

P. John Landry                     Keith Mitchell
DAVIS & & COMPANY                  HARRIS & COMPANY
666 Burrard Street                 555 Burrard Street
Suite 2800 Park Place              14th Floor Bentall 5
Vancouver, BC                      Vancouver, BC
Canada V6C 2Z7                     Canada V6C 2Z7

      _/s/ Peter T. Wechsler_____
      Peter T. Wechsler

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|                                          |     |                        |
|------------------------------------------|-----|------------------------|
| TEMBEC INC., TEMBEC INVESTMENTS          | )   |                        |
| INC., and TEMBEC INDUSTRIES INC.,        | )   |                        |
|                                          | )   |                        |
| Petitioners,                             | )   |                        |
|                                          | )   |                        |
| v.                                       | )   | No. 07-CV-1905 (RMC)   |
|                                          | )   |                        |
| UNITED STATES OF AMERICA, et al.,        | )   |                        |
|                                          | )   |                        |
| Respondents.                             | )   |                        |

_____)

## [PROPOSED] ORDER DISMISSING THE PETITION

Having reviewed the United States' Motion to Dismiss the Petition to Vacate Arbitration

Award, and Plaintiffs' Opposition, the Court hereby ORDERS as follows:

The Petition to Vacate Arbitration Award is DISMISSED, in its entirety, with prejudice.

SO ORDERED on this __ day of _____, 2008.

_____
Rosemary M. Collyer
United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
TEMBEC INC., TEMBEC INVESTMENTS   )
INC., and TEMBEC INDUSTRIES INC.,    )
)
         Petitioners,         )
)
       v.           )      No. 07-CV-1905 (RMC)
)
UNITED STATES OF AMERICA, et al.,    )
)
         Respondents.     )
_____)

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

Of Counsel:

ANDREA J. MENAKER
*Chief, NAFTA Arbitration Division*
*Office of International Claims and*
  *Investment Disputes*
United States Department of State
Office of the Legal Adviser
2201 C. Street, N.W.
Suite 5519
Washington, D.C. 20520

JEFFREY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director
PETER T. WECHSLER
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
Tel: (202) 514-2705 Fax: (202) 616-8470
  *Attorneys for the United States*

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................................................. -iii-

INTRODUCTION ............................................................................................. 1

STATUTORY BACKGROUND ............................................................................ 3

FACTS AND PROCEEDINGS ........................................................................... 4

       A.     The First Petition ........................................................................ 4

       B.     The Stipulation of Dismissal of the Prior Case ........................................... 5

       C.     The Court's Denial of Tembec's Rule 60(b) Motion ............................... 7

       D.     The Second Petition ..................................................................... 8

ARGUMENT ................................................................................................. 9

    I.     RES JUDICATA AND COLLATERAL ESTOPPEL .......................................... 9

    II.    RES JUDICATA BARS TEMBEC FROM RELITIGATING
          ISSUES REGARDING THE NAFTA TRIBUNAL'S
          CONSOLIDATION ORDER, BECAUSE THE PRIOR CASE
          WAS DISMISSED WITH PREJUDICE .............................................. 10

       A.     The First Petition in the Prior Case Raised Issues Regarding
            the NAFTA Tribunal's Consolidation Order, and That Case
            Was Dismissed with Prejudice in Connection with the
            Settlement of the Underlying Dispute ..................................... 11

       B.     Because Tembec Dismissed the Prior Case with Prejudice, Res
            Judicata Bars Tembec From Relitigating Issues Regarding the
            Consolidation Order ............................................................. 12

III.  COLLATERAL ESTOPPEL BARS TEMBEC FROM RELITIGATING
      ISSUES REGARDING THE PARTIES' NEGOTIATIONS AND THE
      SETTLEMENT DOCUMENTS, BECAUSE THE COURT DETERMINED
      SUCH ISSUES WHEN IT DENIED TEMBEC'S RULE 60(b) MOTION ........ 13

      A.  In Denying the Rule 60(b) Motion, the Court Determined Issues
          Regarding the Interpretation of the Settlement Documents and
          the Parties' Negotiations ......................................................................... 14

      B.  Because the Second Petition Seeks to Relitigate Issues Regarding
          the Parties' Negotiations and the Settlement Documents, Collateral
          Estoppel Applies  ..................................................................................... 16

IV.   THE SETTLEMENT OF CLAIMS AGREEMENT ALSO BARS
      TEMBEC FROM FILING THE SECOND PETITION  ...................................... 18

CONCLUSION ....................................................................................................... 18

# TABLE OF AUTHORITIES

**CASE**                                                                 **PAGE(s)**

Al-Harbi v. Citibank, N.A.,
    85 F.3d 680 (D.C. Cir. 1996) ........................................................................... 4

Allen v. McCurry,
    449 U.S. 90 (1980) ...................................................................... 9, 10, 12, 16

Baker v. Director, U.S. Parole Comm'n,
    916 F.2d 725 (D.C. Cir. 1990) ...................................................................... 10

Bryson v. Gere,
    268 F. Supp.2d 46 (D.D.C. 2003) ........................................................ 3, 10, 17

Does I Through III v. District of Columbia,
    238 F. Supp. 2d 212 (D.D.C. 2002) ................................................................ 9

Drake v. FAA,
    291 F.3d 59 (D.C. Cir. 2002) .................................................................... 9, 12

Durney v. Wavecrest Labs, LLC,
    441 F. Supp. 2d 1055 (N.D. Cal. 2005) ....................................................... 13

Elliott v. FDIC,
    305 F. Supp. 2d 79 (D.D.C. 2004) .................................................... 10, 16, 17

Hardison v. Alexander,
    655 F.2d 1281 (D.C. Cir. 1981) ............................................................. 10, 16

International Thunderbird Gaming Corp. v. United Mexican States,
    473 F. Supp. 2d 80 (D.D.C. 2007) ................................................................. 4

LaPrade v. Kidder, Peabody & Co.,
    94 F. Supp. 2d 2 (D.D.C. 2000), aff'd, 246 F.3d 702 (D.C. Cir. 2001) ........................... 4

Nemaizer v. Baker,
    793 F.2d 58 (2d Cir. 1986) .......................................................................... 13

Page v. United States,
    729 F.2d 818 (D.C. Cir. 1984) ..................................................................... 12

Samuels v. Northern Telecom, Inc.,
    942 F.2d 834 (2d Cir. 1991) ........................................................................ 13

<u>Securities Indus. Ass'n v. Bd. of Governors</u>,
    900 F.2d 360 (D.C. Cir. 1990) ................................................................ 17

<u>Shearson/Am. Express, Inc. v. McMahon</u>,
    482 U.S. 220 (1987) .......................................................................... 4

<u>Teamsters Local Union No. 61 v. UPS</u>,
    272 F.3d 600 (D.C. Cir. 2001) ............................................................ 4

<u>U.S. Indus. v. Blake Constr. Co.</u>,
    765 F.2d 195 (D.C. Cir. 1985) .......................................................... 9, 12, 18

<u>Yamaha Corp. v. United States</u>,
    961 F.2d 245 (D.C. Cir. 1992) .......................................................... 10, 17

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
TEMBEC INC., TEMBEC INVESTMENTS           )
INC., and TEMBEC INDUSTRIES INC.,         )
                                          )
       Petitioners,                      )
                                          )
    v.                                    )      No. 07-CV-1905 (RMC)
                                          )
UNITED STATES OF AMERICA, et al.,         )
                                          )
       Respondents.                      )
_____)

### MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION TO DISMISS

      The Court should dismiss the Petition to Vacate Arbitration Award filed by Tembec Inc.,

Tembec Investments Inc., and Tembec Industries Inc. (collectively, "Tembec") on the grounds of

res judicata and collateral estoppel.  Res judicata applies to the issues in the Petition that were

raised in a prior case with the same parties, because that case was dismissed with prejudice in

connection with a settlement of the underlying dispute.  Collateral estoppel applies to each of the

other issues in the Petition, because the Court determined those issues in denying Tembec's

motion seeking to set aside the dismissal of the prior case under Rule 60(b) of the Federal Rules

of Civil Procedure.

### INTRODUCTION

      On December 7, 2005, Tembec commenced the prior case by filing a Petition to Vacate

Arbitration Award ("First Petition"), a copy of which is attached hereto as Exhibit A.  Docket

No. 1 in C.A. No. 05-2345.  The First Petition challenged orders issued by a tribunal constituted

under Article 1126 of the North American Free Trade Agreement ("NAFTA tribunal"),

consolidating three arbitrations brought against the United States under Chapter Eleven of

NAFTA by Canadian companies, including Tembec, that harvest timber and export softwood

lumber to the United States.  The First Petition raised issues regarding the consolidation order entered by the NAFTA tribunal, the selection of the tribunal panel, and the tribunal's jurisdiction over Tembec's NAFTA Claim.  While the First Petition was pending, the United States and Canada executed the Softwood Lumber Agreement of 2006 in order to resolve the underlying dispute as to duties imposed on such lumber exports, and the United States and Tembec executed the Settlement of Claims Agreement, by which Tembec agreed to dismiss the First Petition and also agreed not to refile it.  On October 17, 2006, the Court approved the parties' Stipulation of Dismissal with Prejudice.  Docket No. 25 in C.A. No. 05-2345.  Tembec received $242 million in connection with the resolution of the underlying dispute.

Meanwhile, the United States pursued its application for attorney fees and tribunal costs in the NAFTA arbitration proceeding, which was filed in April of 2006 and was not subject to the Settlement of Claims Agreement.  Tembec filed a "Rule 60(b) Motion to Set Aside the Judgment" in the prior case, raising issues regarding the parties' negotiations and the interpretation of the settlement documents.  Docket No. 26 in C.A. No. 05-2345.  The Court denied that motion by memorandum opinion dated April 29, 2007, a copy of which is attached hereto as Exhibit B.  Docket Nos. 26, 35.

On October 19, 2007, after the NAFTA tribunal awarded attorney fees and tribunal costs to the United States in the arbitration proceeding, Tembec commenced the present case by filing the Petition to Vacate Arbitration Award ("Second Petition"), a copy of which is attached hereto as Exhibit C, seeking to vacate the NAFTA tribunal's fee award and its prior orders.  The Second Petition raises issues regarding the NAFTA tribunal's consolidation order, the selection of the tribunal panel, the tribunal's jurisdiction over Tembec's NAFTA Claim, and the parties' negotiations and the settlement documents.  Docket No. 1 in C.A. No. 07-1905.

2

Res judicata bars Tembec from relitigating issues regarding the NAFTA tribunal's consolidation order, the selection of the tribunal panel, and the tribunal's jurisdiction over Tembec's NAFTA Claim, because such issues were included in the First Petition, and the prior case was dismissed with prejudice.  Collateral estoppel bars Tembec from relitigating issues regarding the parties' negotiations and the settlement documents, because such issues were determined by the Court in denying Tembec's Rule 60(b) Motion.  In addition, the filing of the Second Petition violates the Settlement of Claims Agreement, which bars Tembec from refiling the claims included in the First Petition.

## STATUTORY BACKGROUND

The Federal Arbitration Act ("Act"), 9 U.S.C. §§ 1 et seq., provides limited grounds for a District Court to vacate an arbitration award.  See Bryson v. Gere, 268 F. Supp.2d 46, 50 (D.D.C. 2003)).  Under the Act, such an award may be vacated:

(1)    where the award was procured by corruption, fraud, or undue means;

(2)    where there was evident partiality or corruption in the arbitrators, or either of them;

(3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)    where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1-4).

3

The United States has a policy of "favoring arbitration" and "rigorously enforc[ing] agreements to arbitrate," and therefore avoiding unnecessary judicial involvement in that process. Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987) (quotations omitted). The standard of review of arbitral awards by federal courts is extremely high, making such review "extremely limited." Teamsters Local Union No. 61 v. UPS, 272 F.3d 600, 604 (D.C. Cir. 2001). Courts "do not sit to hear claims of factual or legal error by an arbitrator." Id. (quotation omitted). In the absence of a legal basis to vacate, courts have "no discretion but to confirm the award." International Thunderbird Gaming Corp. v. United Mexican States, 473 F. Supp. 2d 80, 83 (D.D.C. 2007); 9 U.S.C. § 9.

Pursuant to this limited scope of review under the Act, "a court must confirm an arbitration award where some colorable support for the award can be gleaned from the record." LaPrade v. Kidder, Peabody & Co., 94 F. Supp. 2d 2, 4 (D.D.C. 2000), aff'd, 246 F.3d 702, 706 (D.C. Cir. 2001). The party seeking to vacate an arbitration award bears the "heavy burden" of establishing that vacatur is appropriate. LaPrade, 246 F.3d at 706; Al-Harbi v. Citibank, N.A., 85 F.3d 680, 683 (D.C. Cir. 1996); Int'l Thunderbird Gaming, 473 F. Supp.2d at 83. In particular, the applicable rules provide an arbitration panel with "wide discretion to award costs and fees." Id. at 85.

## FACTS AND PROCEEDINGS

### A.    The First Petition

The First Petition involved a dispute regarding subsidies received by softwood lumber producers, including Tembec, that harvest timber on public Canadian land and export lumber to the United States, and arbitration commenced under the investment chapter of the NAFTA with respect to that dispute. See Ex. A ¶ 2; Ex. B at 1-2. In the arbitration proceeding, Tembec

asserted a claim against the United States ("NAFTA Claim"), seeking to recover "more than

$200 million," <u>see</u> Ex. A ¶ 6, for harm alleged to have arisen from antidumping and

countervailing duty determinations made by the United States Department of Commerce and the

International Trade Commission that resulted in the imposition of duties on softwood lumber

exports from Canada.  <u>See</u> Ex. A ¶¶ 4-6; Ex. B at 1-2.  By order dated September 7, 2005

("Consolidation Order"), the NAFTA tribunal consolidated three similar arbitrations brought

under Chapter Eleven of NAFTA against the United States by Tembec and other Canadian

companies that export softwood lumber to the United States.  <u>See</u> Ex. A ¶ 2; Ex. B at 2.

Tembec filed the First Petition on December 7, 2005, seeking to vacate the Consolidation

Order under 9 U.S.C. § 10, raising issues regarding the NAFTA tribunal's Consolidation Order,

the selection of Davis Robinson as a member of the tribunal panel, and the tribunal's jurisdiction

over Tembec's NAFTA Claim.  <u>See</u> Ex. A ¶¶ 1, 2, 10-16.  Tembec filed a Motion to Vacate the

Order on February 17, 2006.  <u>See</u> Docket No. 7 in C.A. No. 05-2345.

### B.    The Stipulation of Dismissal of the Prior Case

On September 12, 2006, the United States and Canada signed the Softwood Lumber

Agreement of 2006 ("Agreement" or "SLA").  Although it initially set a target date of October 1,

2006, the Softwood Lumber Agreement provided that it would not enter into force until Canada

and the United States confirmed that certain conditions precedent had been met, including the

execution of a "Termination of Litigation Agreement" ("TLA") by all parties to the twenty

covered actions that were listed in the TLA.  <u>See</u> Ex. B at 2-3.  Pursuant to the TLA, these

twenty actions were to be terminated when the Softwood Lumber Agreement entered into force.

After Canada and the United States recognized that it would not be possible to satisfy all

conditions precedent in the Softwood Lumber Agreement by the initial target date, they modified

some of these conditions and set a new date of October 12, 2006.  <u>Id</u>.  As a result, the TLA, which contemplated the termination of twenty actions, was replaced with a more limited "Settlement of Claims Agreement" ("SCA") (Docket No. 26, Ex. G; Docket No. 27, Ex. E), which contemplated the termination of four actions, including the First Petition.  <u>See</u> the SCA, a copy of which is attached hereto as Exhibit E, ¶ 1; <u>see also</u> Ex. B at 2-3.  The SCA provides that the parties "shall not re-file any of the [four] actions."  Ex. E ¶ 10.

Tembec and the United States filed a Stipulation of Dismissal With Prejudice on October 12, 2006, dismissing the prior case "with prejudice, subject to the terms and conditions of the Softwood Lumber Agreement," pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure.  <u>See</u> Docket No. 25 in C.A. No. 05-2345; <u>see also</u> Ex. B at 3-4; Ex. C ¶ 23.  A copy of the Stipulation is attached hereto as Exhibit F.  The Court (Collyer, J.) approved the Stipulation on October 17, 2006, thereby dismissing the prior case "with prejudice" pursuant to Rule 41(a)(1)(ii), and denying, as moot, Tembec's then-pending Motion to Vacate.  <u>See</u> Minute Order (Docket No. 25).

When Canada and the United States obtained the signatures of Tembec and other necessary parties to the SCA, the Softwood Lumber Agreement entered into force on October 12, 2006.  Tembec received $242 million in connection with the resolution of the softwood lumber dispute underlying its NAFTA Claim.  <u>See</u> Ex. B at 2; 15; Ex. C ¶ 21; <u>see also</u> Joint Order on the Costs of Arbitration and for the Termination of Certain Arbitral Proceedings dated July 19, 2007, of which relevant portions are attached hereto as Exhibit D, at 4.

### C.     **The Court's Denial of Tembec's Rule 60(b) Motion**

In April of 2006, the United States filed an application for legal fees and tribunal costs totaling approximately $270,000 in the NAFTA arbitration proceeding.  <u>See</u> Ex. C  ¶ 27; Ex. D at 4, 11, 28-9, 89-90.  The United States pursued this application, which was not subject to the Settlement of Claims Agreement, in the arbitration proceeding.  <u>See</u> Ex. E ¶ 1.  On November 9, 2006, Tembec filed a "Notice of Reinstatement of Action or, in the alternative, Rule 60(b) Motion to Set Aside the Judgment" ("Rule 60(b) Motion"), seeking to withdraw the Stipulation of Dismissal with Prejudice under Rule 60(b) of the Federal Rules of Civil Procedure.  Docket No. 26 in C.A. No. 05-2345.  A copy of the Rule 60(b) Motion is attached hereto as Exhibit G. After the United States filed an Opposition, Tembec filed a Reply Memorandum, and, with leave of court, filed a Supplemental Brief, and the United States filed a response.  Docket Nos. 27-32 in C.A. No. 05-2345.

The Rule 60(b) Motion alleged that the Stipulation was subject to the Softwood Lumber Agreement, and that the United States' request for fees and costs in the arbitration proceeding contravened the Agreement, because the Agreement incorporated the TLA, under which each party to the arbitration proceeding would bear its own fees and costs, and the SCA supplemented, but did not replace, the TLA.  In the alternative, the Rule 60(b) Motion sought to vacate the Stipulation of Dismissal under Rule 60(b) of the Federal Rules of Civil Procedure, and thereby allow Tembec to proceed with the First Petition, alleging that, if the Softwood Lumber Agreement permitted an award of fees and costs to the United States in the arbitration proceeding, and if the SCA replaced the TLA, the United States misled Tembec into believing that the Softwood Lumber Agreement barred such an award, and that the United States would not seek such an award; that the NAFTA tribunal's Consolidation Order was invalid; and that the

7

tribunal panel, which included Mr. Robinson, was biased and overreached in considering whether to award fees and costs to the United States.

After holding a hearing, see Docket No. 32, the Court issued a Memorandum Opinion dated April 19, 2007, denying the Rule 60(b) Motion and declining to vacate the Stipulation of Dismissal With Prejudice.  See Ex. B at 1, 9; Ex. C ¶ 29.  The Court found that the "governing documents in this case – the Stipulation of Dismissal, the SLA, [and] the SCA, . . . are clear and unambiguous, . . . [and] do not preclude the United States from seeking fees and costs against Tembec related to Tembec's NAFTA Claim," Mem. Op. at 8; see also id. at 5, 7; and the Court found that "the TLA never became a binding contract" because "the United States did not execute" it, id. at 6 n.2.  In addition, the Court found that Tembec "had reason to know that the SCA replaced the TLA," id. at 9; and found "no evidence that the United States knowingly misled Tembec and no basis to reopen the case."  Id. at 1.

**D.   The Second Petition**

After extensive briefing and a hearing, the NAFTA tribunal issued an order dated July 19, 2007, requiring Tembec to pay approximately $270,000 in fees and costs to the United States.  See Ex. D at 4, 90; see also Ex. C ¶¶ 27, 29.

Tembec filed the Second Petition on October 19, 2007, seeking to vacate the NAFTA tribunal's award of fees and costs to the United States in the arbitration proceeding, "and all of the tribunal's orders leading up to the final arbitration award," under 9 U.S.C. § 10.  See Ex. C ¶¶ 1, 2, 34.  The Second Petition asserted: (a) that the Softwood Lumber Agreement barred the award of fees and costs to the United States in the arbitration proceeding; (b) that, if the Agreement permitted such an award, the United States misrepresented that the Agreement bars such an award, and that the United States would not seek such an award; and (c) that the

Consolidation Order issued by the NAFTA tribunal was invalid, the tribunal lacked jurisdiction over Tembec's NAFTA Claim, and the tribunal improperly included Mr. Robinson.  Id. ¶¶ 9-32.[1]

After the United States filed a Notice of Related Case, the Court reassigned the present case to Judge Collyer, who had been assigned the prior case, by Order dated December 19, 2007. See Docket No. 6.

## ARGUMENT

## I.    RES JUDICATA AND COLLATERAL ESTOPPEL

"The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel."  Allen v. McCurry, 449 U.S. 90, 94 (1980).  Under the doctrine of res judicata, which is also termed claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  Id.; see also Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2002).  Res judicata applies where there is an identity of the cause of action, and of the parties, in both actions, and a court of competent jurisdiction entered a final judgment on the merits in the first action.  See Does I Through III v. District of Columbia, 238 F. Supp. 2d 212, 217 (D.D.C. 2002).

The doctrine of collateral estoppel, which is also known as issue preclusion, bars a party from relitigating issues of fact or law that were actually litigated in the course of reaching earlier judgments.  See Allen v. McCurry, 449 U.S. at 94.  "Some courts and commentators use 'res judicata' as generally meaning both forms of preclusion."  Id. at 94 n.5.  These related doctrines "encourage[] a party to mount in a single action its claims against the party which it has hailed into court," U.S. Indus. v. Blake Constr. Co., 765 F.2d 195, 209 (D.C. Cir. 1985) (internal

---

[1] Although The Second Petition also named as respondents the two other Canadian companies that were involved in the consolidated arbitration proceedings, Tembec does not assert any claims against these companies or seek any relief from them.  See Ex. C ¶ 34.

citation omitted), "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and prevent serial forum-shopping and piecemeal litigation." Hardison v. Alexander, 655 F.2d 1281, 1288 (D.C. Cir. 1981); see also Bryson v. Gere, 268 F. Supp. 2d at 54.  Where either of these doctrines apply, it is appropriate for a district court, even acting sua sponte, to dismiss a complaint for failure to state a claim.  See Baker v. Director, U.S. Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990).

Under collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. at 94; Elliott v. FDIC, 305 F. Supp. 2d 79, 83-84 (D.D.C. 2004).  As the doctrine has been applied by the D.C. Circuit, collateral estoppel applies where the same issue now being raised was "contested by the parties and submitted for judicial determination in the prior case" and the issue was "actually and necessarily determined by a court of competent jurisdiction in that prior case." Yamaha Corp. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992).

As discussed below, collateral estoppel and res judicata apply to the issues raised by the Second Petition.

## II.    RES JUDICATA BARS TEMBEC FROM RELITIGATING ISSUES REGARDING THE NAFTA TRIBUNAL'S CONSOLIDATION ORDER, BECAUSE THE PRIOR CASE WAS DISMISSED WITH PREJUDICE

The First Petition filed by Tembec in the prior case raised issues regarding the Consolidation Order entered by the NAFTA tribunal in the arbitration proceeding, the selection of the tribunal panel, and the tribunal's jurisdiction over Tembec's NAFTA Claim.  The Second Petition filed by Tembec in the present case also raises these same issues.  The doctrine of res judicata bars Tembec from relitigating such issues, because Tembec dismissed the prior case

with prejudice in connection with the settlement of the underlying dispute.

**A.      The First Petition in the Prior Case Raised Issues Regarding the NAFTA Tribunal's Consolidation Order, and That Case Was Dismissed with Prejudice in Connection with the Settlement of the Underlying Dispute**

After a dispute arose regarding subsidies received by Tembec and other companies that harvest timber on public Canadian land and export softwood lumber to the United States, Tembec commenced arbitration against the United States under Chapter Eleven of NAFTA with respect to that dispute, seeking to recover more than $200 million in connection with duties imposed on softwood lumber exports from Canada.  See Ex. A ¶¶ 2-6; Ex. B at 1-2.  The NAFTA tribunal issued the Consolidation Order on September 7, 2005, thereby consolidating that arbitration with similar arbitrations brought by other companies.  See Ex. A ¶ 2, Ex. B at 1-2.  The First Petition sought to vacate the NAFTA tribunal's Consolidation Order under 9 U.S.C. § 10, raising issues regarding the NAFTA tribunal's Consolidation Order, the inclusion of Mr. Robinson on the tribunal panel, and the tribunal's jurisdiction over Tembec's NAFTA Claim.  See Ex. A ¶¶ 1, 2, 10-16.  Tembec also filed a Motion to Vacate the Order.  See Docket No. 7 in C.A. No. 05-2345.

Although Tembec could have litigated these issues and contentions in the prior case, Tembec instead decided to forego that opportunity as part of a settlement of the underlying dispute, by which Tembec received $242 million.  See Ex. B at 2-3; Ex. C ¶ 21; Ex. D at 4; Ex. F.  The Softwood Lumber Agreement entered into by the United States and Canada provided that it would not enter into force until certain conditions precedent had been met.  See Ex. B at 2-3.  Among these conditions was the termination of the prior case.  See Ex. E ¶ 1.  The Softwood Lumber Agreement entered into force on October 12, 2006, after Tembec and the United States filed a Stipulation of Dismissal With Prejudice on October 12, 2006, agreeing to dismiss the

11

prior case "with prejudice, subject to the terms and conditions of the Softwood Lumber Agreement," pursuant to Federal Rule 41(a)(1)(ii).  See Ex. F; see also Ex. B at 3-4; Ex. C ¶ 23. The Court approved the Stipulation, thereby dismissing the prior case "with prejudice" pursuant to Rule 41(a)(1)(ii), and denying, as moot, Tembec's then-pending Motion to Vacate.  Docket No. 25 in C.A. No. 05-2345; see also Ex. B  at 2; Ex. C ¶¶ 21, 23.

As discussed below, Tembec impermissibly seeks to relitigate the issues regarding the NAFTA tribunal's Consolidation Order, the inclusion of Mr. Robinson on the tribunal panel, and the tribunal's jurisdiction over Tembec's NAFTA Claim.

> **B.     Because Tembec Dismissed the Prior Case with Prejudice, Res Judicata Bars Tembec From Relitigating Issues Regarding the Consolidation Order**

The Second Petition seeks to vacate "all of the tribunal's orders leading up to" the NAFTA tribunal's award of fees and costs to the United States in the arbitration proceeding, including the Consolidation Order, under 9 U.S.C. § 10.  See Ex. C ¶¶ 1, 2, 27, 34.  The Second Petition contends in part that the Consolidation Order issued by the tribunal was invalid, that the tribunal panel should not have included Mr. Robinson, and that the tribunal lacked jurisdiction over Tembec's NAFTA Claim.  Id. ¶¶ 9-32.

Under the doctrine of res judicata, a final judgment precludes the parties from relitigating issues that were raised or could have been raised in the prior action.  Allen v. McCurry, 449 U.S. at 94; Drake v. FAA, 291 F.3d at 66; Page v. United States, 729 F.2d 818, 820 (D.C. Cir. 1984); U.S. Indus. v. Blake Constr., 765 F.2d at 207.  As discussed above, the First Petition raised the same factual and legal issues as are now presented by the Second Petition with respect to the NAFTA tribunal's Consolidation Order, Mr. Robinson's inclusion on the tribunal panel, and the tribunal's jurisdiction over Tembec's NAFTA Claim.  Because Tembec raised such issues in the

First Petition and dismissed the prior case with prejudice under Federal Rule 41(a)(1)(ii),

Tembec cannot now relitigate these issues.

A stipulation of dismissal with prejudice under Federal Rule 41(a)(1) "has the effect of a

final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff

upon the same cause of action."  Nemaizer v. Baker, 793 F.2d 58, 60 (2d Cir. 1986).  Once such

a stipulation has been filed, res judicata bars the plaintiff from raising the same claim "in a later

federal suit."  Id. at 61; see also Samuels v. Northern Telecom, Inc., 942 F.2d 834, 836-37 (2d

Cir. 1991).  The fact that Tembec decided to dismiss the prior action with prejudice rather than

litigating the issues raised in the First Petition does not preclude the application of res judicata.

See Durney v. Wavecrest Labs, LLC, 441 F. Supp. 2d 1055, 1059 (N.D. Cal. 2005).  "The test is

not whether or not the claim was litigated, but whether or not there was a final judgment on the

merits."  Id.

Under res judicata, the filing of the Stipulation of Dismissal with Prejudice therefore bars

Tembec from relitigating such issues.  The Court's approval of the Stipulation, dismissing the

case "with prejudice" pursuant to Rule 41(a)(1)(ii), see Docket No. 25, has the same effect.

III.   **COLLATERAL ESTOPPEL BARS TEMBEC FROM RELITIGATING ISSUES
       REGARDING THE PARTIES' NEGOTIATIONS AND THE SETTLEMENT
       DOCUMENTS, BECAUSE THE COURT DETERMINED SUCH ISSUES WHEN
       IT DENIED TEMBEC'S RULE 60(b) MOTION**

The doctrine of collateral estoppel bars Tembec from relitigating issues regarding the

parties' negotiations and the interpretation of the settlement documents, because the Court

determined these issues when it denied the Rule 60(b) Motion filed by Tembec in the prior case.

**A.     In Denying the Rule 60(b) Motion, the Court Determined Issues Regarding the Interpretation of the Settlement Documents and the Parties' Negotiations**

When the Court denied the Rule 60(b) Motion filed by Tembec, the Court determined factual and legal issues regarding the parties' settlement negotiations and the interpretation of the Softwood Lumber Agreement, the SCA, and the Stipulation of Dismissal with Prejudice, insofar as those negotiations and documents related to the United States' request for fees and costs in the arbitration proceeding.

The Rule 60(b) Motion sought to withdraw the Stipulation of Dismissal, alleging that the Stipulation was subject to the Softwood Lumber Agreement, and that the United States' request for fees and costs in the arbitration proceeding contravened the Agreement, because the Agreement incorporated the TLA, under which each party to the arbitration proceeding would bear its own fees and costs, and the SCA supplemented, but did not replace, the TLA.  See Ex. G at 1-6; Tembec's Supplemental Brief at 1-2, 5.  In the alternative, the Rule 60(b) Motion sought a court order vacating the Stipulation, asserting that, if the Softwood Lumber Agreement permitted such an award of fees and costs, and if the SCA replaced the TLA, the United States misled Tembec into believing that the Softwood Lumber Agreement barred such an award, and that the United States would not seek such an award.  See Ex. G at 3-9; Tembec's Reply Memo. at 1-16; Tembec's Supplemental Brief at 4-6.

After the parties briefed these issues and the Court held a hearing, the Court rejected Tembec's contentions, found "no basis to reopen the case," and denied the Rule 60(b) Motion. See Ex. B (Mem. Op. dated April 19, 2007) at 1; see also Ex. C ¶ 29.  First, the Court found that the "governing documents in this case – the Stipulation of Dismissal, the SLA, [and] the SCA, [–] . . . are clear and unambiguous, . . . [and] do not preclude the United States from seeking fees

14

and costs against Tembec related to Tembec's NAFTA Claim," Mem. Op. at 8; and found that "the TLA never became a binding contract," because "the United States did not execute" it, id. at 6 n.2.

Second, the Court rejected Tembec's claim that it was "misled into believing that the SCA supplemented, but did not replace, the TLA." Mem. Op. at 5. The Court found that the SCA was "presented . . . to Tembec for signature" by Canada, "not [by] the United States," id.; that "[t]he United States had no reason to know whether and to what extent Canada was sharing information with stakeholders like Tembec," id.; that "the United States had no duty to explain the terms of the SLA or the SCA to Canada, with whom it was negotiating, let alone to Tembec," id. at 5-6 (footnote omitted); that "Tembec was at all times represented by counsel," id. at 6; that "Tembec's counsel reviewed the SCA and suggested 'very modest changes,'" id. (citation omitted); and that "Tembec's NAFTA Claim plainly was not referenced by the SCA, and Tembec did not question this," id. The Court therefore found that it was "unreasonable" for Tembec "to interpret the SCA as supplemental to the TLA." Id. As a result of these findings, the Court determined that "Tembec's argument that it believed that the SCA supplemented the TLA, and did not replace it, [was] disingenuous, because Tembec should have known that the TLA was replaced by the SCA." Id. The Court concluded that Tembec did not submit clear and convincing evidence of fraud or misconduct by the United States. Id. at 5.

In denying the Rule 60(b) Motion, the Court thus determined the factual and legal issues raised by Tembec regarding the interpretation of the settlement documents and the parties' negotiations in connection with the United States' requests for fees and costs in the arbitration proceeding. As discussed below, Tembec impermissibly seeks to relitigate these issues.

**B.      Because the Second Petition Seeks to Relitigate Issues Regarding the Parties'
         Negotiations and the Settlement Documents, Collateral Estoppel Applies**

The Second Petition seeks to vacate, under 9 U.S.C. § 10, the NAFTA tribunal's award

of fees and costs to the United States in the arbitration proceeding, asserting that the Softwood

Lumber Agreement bars such an award, and, in the alternative, that the United States

misrepresented that the Agreement barred such an award, and that the United States would not

seek such an award.  <u>See</u> Ex. C ¶¶ 21-25, 27, 34.  As discussed above, the factual and legal

issues presented by the Second Petition regarding the interpretation of the settlement documents

and the Parties' negotiations were previously raised by Tembec, contested by the parties, and

determined by the Court in connection with the Rule 60(b) Motion filed in the prior case.  <u>See</u>

Ex. C ¶ 29.  In denying the Rule 60(b) Motion, the Court determined that the SLA did not bar the

United States from seeking an award of fees and costs in the arbitration proceeding, that the

United States did not misrepresent the terms of the governing settlement documents, and that

Tembec was not misled by the United States.  <u>See</u> Ex. B at 5-9.  The Second Petition thus seeks

to relitigate the same factual and legal issues that were decided in the prior action.

Collateral estoppel, which is intended to conserve judicial resources, avoid inconsistent

results, and prevent serial forum-shopping and piecemeal litigation, <u>see</u> <u>Hardison v. Alexander</u>,

655 F.2d at 1288, bars a party from relitigating issues of fact and law that were litigated in a

prior case.  <u>See</u> <u>Allen v. McCurry</u>, 449 U.S. at 94.  Where, as here, an issue "has already been

litigated, and decided, the doctrine of collateral estoppel precludes plaintiff from raising this

issue again." <u>Elliott v. FDIC</u>, 305 F. Supp. 2d at 84 (footnote omitted).  Collateral estoppel

applies because the issues raised by the Second Petition were "contested by the parties and

submitted for judicial determination" in connection with the Rule 60(b) Motion filed by Tembec

16

in the prior case, and such issues were determined by a court of competent jurisdiction. See Yamaha Corp., 961 F.2d at 254. The Second Petition, which seeks to relitigate these same factual and legal issues, must therefore be dismissed. See Elliott v. FDIC, 305 F. Supp. 2d at 84 (dismissing the action with prejudice).

Collateral estoppel bars Tembec from filing the Second Petition, because both cases involve the same issues regarding the parties' negotiations and the interpretation of the settlement documents. The Second Petition seeks to vacate the fee award, based upon Tembec's assertions that the Softwood Lumber Agreement barred an award of fees and costs, or alternatively that the United States misrepresented that it would not seek such an award. Both Petitions are based upon the same factual and legal issues. Collateral estoppel applies to the issues raised and determined in the prior case, rather than being limited to the specific arguments made in that case. See Yamaha Corp., 961 F.2d at 254 ("[O]nce an issue is raised and determined, it is the entire issue that is precluded, not just the particular arguments raised in support of it in the first case.") (emphasis in original) (citing Securities Indus. Ass'n v. Bd. of Governors, 900 F.2d 360, 364 (D.C. Cir. 1990)). "Where the basic facts underlying the new claims are indistinguishable from the facts at issue in the prior adjudication, the new claims are properly precluded." Bryson v. Gere, 268 F. Supp. 2d at 58. Because the Court determined the factual and legal issues regarding the settlement negotiations and the interpretation of the settlement documents in denying the Rule 60(b) Motion, Tembec cannot revisit these issues.

**IV.     THE SETTLEMENT OF CLAIMS AGREEMENT ALSO BARS TEMBEC FROM FILING THE SECOND PETITION**

Finally, the Settlement of Claims Agreement executed by the parties prior to the Court's dismissal of the First Petition provides an independent basis for dismissal of the Second Petition. In signing the Settlement of Claims Agreement as part of the settlement of the prior case, Tembec expressly agreed both to dismiss the First Petition and not to "re-file" it.  Ex. E ¶¶ 1, 10. The SCA thus serves as an additional bar to Tembec's attempts to relitigate the issues and contentions that were raised by the First Petition.  Because res judicata bars Tembec from relitigating these issues and contentions as discussed above, the Court need not, however, decide this point as to the SCA.  See U.S. Indus. v. Blake Constr., 765 F.2d at 200 n.9 (because res judicata applied, the court did not reach the issue of whether the terms of a stipulation filed by the parties also barred the action).

**CONCLUSION**

For these reasons, the Court should dismiss the Petition to Vacate Arbitration Award, in its entirety, with prejudice.

Dated: January 30, 2008                    Respectfully submitted,

                                           PETER D. KEISLER
                                           Assistant Attorney General
Of Counsel:

                                           JEFFREY A. TAYLOR
                                           United States Attorney

ANDREA J. MENAKER                          VINCENT M. GARVEY
*Chief, NAFTA Arbitration Division*        Deputy Branch Director
*Office of International Claims and*
  *Investment Disputes*                       */s/ Peter T. Wechsler*
United States Department of State          PETER T. WECHSLER (MA 550339)
Office of the Legal Adviser                Trial Attorney
2201 C. Street, N.W.                       U.S. Department of Justice, Civil Division
Suite 5519                                 Federal Programs Branch
Washington, D.C. 20520                     Post Office Box 883
                                           Washington, D.C.  20044
                                           Tel: (202) 514-2705  Fax: (202) 616-8470
                                              *Attorneys for the United States*

        CERTIFICATE OF SERVICE:

I HEREBY CERTIFY that on January 30, 2008, a true copy of the foregoing Memorandum was
served on petitioner's counsel, Mark A. Cymrot, BAKER & HOSTETLER LLP, via ECF, and
upon counsel for Canfor Corporation and Terminal Forest Products Ltd. by first-class mail to:

        P. John Landry                     Keith Mitchell
        DAVIS & & COMPANY                  HARRIS & COMPANY
        666 Burrard Street                 555 Burrard Street
        Suite 2800 Park Place              14th Floor Bentall 5
        Vancouver, BC                      Vancouver, BC
        Canada V6C 2Z7                     Canada V6C 2Z7

                                             */s/ Peter T. Wechsler*
                                           Peter T. Wechsler

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In the Matter of the Arbitration between ) | |
| ) | |
| TEMBEC INC., TEMBEC INVESTMENTS ) | |
| INC., TEMBEC INDUSTRIES INC. ) | |
| ) | |
| Petitioners, ) | Case No._____ |
| ) | |
| and ) | |
| ) | |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## PETITION TO VACATE ARBITRATION AWARD

1.      Petitioners, Tembec Inc., Tembec Investments Inc., and Tembec Industries, Inc. ("Tembec"), bring this Petition to Vacate Arbitration Award against Respondent the United States of America ("United States").

2.      With this Petition, Tembec provides Notice to the United States under 9 U.S.C. § 12 that Tembec will file a "Motion to Vacate the Arbitration Award" ("Motion to Vacate"), pursuant to 9 U.S.C. §§ 10 and 12 of the Federal Arbitration Act ("FAA").  In the Motion to Vacate, Petitioner will move for an order vacating the final decision and order of the North American Free Trade Agreement ("NAFTA") Article 1126 tribunal on September 7, 2005 in *Canfor Corporation v. United States of America, Tembec Inc. et al v. United States of America,* in favor of the Government of the United States of America, which unlawfully terminated Tembec's arbitration proceedings under NAFTA Article 1120 ("Award").

3.     This Petition and its accompanying Notice are being filed and served on December 7, 2005, within three months of the NAFTA Article 1126 tribunal's Award, and therefore are timely submitted pursuant to 9 U.S.C. § 12.

4.     Tembec submitted to a NAFTA Article 1120 tribunal claims for arbitration against the United States for violating its obligations to Tembec and its U.S. investments under Chapter 11 of NAFTA.

5.     Tembec alleges in its NAFTA Chapter 11 claims that the United States applied its antidumping and countervailing duty laws to Tembec and its investments in an arbitrary, unfair, and discriminatory manner in violation of Article 1102, 1103, 1105 and 1110 of NAFTA.

6.     Since May 2002, the United States has imposed duties on softwood lumber from Canada that the World Trade Organization and NAFTA appeal tribunals have held to be unlawful under both U.S. and international law. Tembec brought the arbitration proceedings to recover more than $200 million in damages from these unlawful duties.

7.     The NAFTA Article 1120 tribunal was formed on August 4, 2004, to adjudicate Tembec's NAFTA Chapter 11 claims in the matter of *Tembec Inc. et al. v. United States*. Tembec appointed Professor James Crawford of Australia, the United States appointed Professor Kenneth Dam of the United States of America, and ICSID appointed Judge Florentino Feliciano of the Philippines with the consent of both the United States and Tembec. Neither Tembec nor the United States had objections as to any of the Article 1120 tribunal members or the formation of the tribunal.

8.    On the eve of the jurisdictional hearing, the United States sought to terminate the Article 1120 tribunal by submitting a request to ICSID to consolidate Tembec's NAFTA Chapter 11 claims with claims by Canfor Corporation ("Canfor") and Terminal Forest Products Limited ("Terminal"), two other Canadian softwood lumber producers.

9.    ICSID complied with the request despite Tembec's objections that the United States' request had been made too late. The Article 1126 tribunal stayed Tembec's Article 1120 arbitration proceedings even though the appointment of two of the tribunal members still was subject to challenge under the governing UNCITRAL Rules of Arbitration.

10.    Tembec objected to the appointment of Mr. Davis Robinson to the Article 1126 tribunal on the bases that (a) he is the first cousin to the President of the United States; the President has been personally and directly involved in the softwood lumber dispute with Canada; (b) Mr. Robinson previously served as head of the legal office now representing the United States in the current arbitration; and (c) his selection by ICSID was made from a small list of arbitrators officially appointed by the United States; all of which raised "justifiable doubts" under Article 10 of the UNCITRAL Rules as to his ability to remain impartial and independent. Mr. Robinson refused to withdraw from the tribunal even though all parties except the United States joined in Tembec's objection.

11.    Thus, one of the three Article 1126 members was selected from a small, pre-screened list of candidates chosen by the United States, even though none of the members of the Article 1126 tribunal had been selected by Tembec. The Article

1126 tribunal unfairly represented the United States' preferences for arbitrators to determine whether Tembec's Article 1120 arbitration proceedings should be terminated, and to adjudicate Tembec's NAFTA Chapter 11 claims against the United States.

12.    The tribunal refused to stay its own proceedings or lift its stay of Tembec's Article 1120 proceedings while the challenge to Mr. Robinson remained pending.

13.    The Article 1126 tribunal required a hearing and the submission of briefs, then decided on September 7, 2005 to consolidate the claims of Tembec, Canfor and Terminal, to assume jurisdiction over all of the claims, and to terminate Tembec's Article 1120 tribunal. The Article 1126 tribunal's Award was final and conclusive as to the questions of consolidation and termination of Article 1120 proceedings, even though the Article 1126 tribunal is continuing arbitration proceedings as to the substance of NAFTA Chapter 11 claims as to Canfor and Terminal. Tembec has ceased from further participation in the Article 1126 proceedings.

14.    Tembec petitions this Court to vacate and set aside the Award of the Article 1126 tribunal.

## CLAIMS FOR RELIEF

I.    **PETITION TO VACATE AWARD**

15.    The Article 1126 tribunal's Award constitutes a final award under 9 U.S.C. § 10 that is appropriate for judicial review. The September 7, 2005 decision and order finally and definitively disposes of the United States' request for consolidation by terminating Tembec's right to proceed with arbitration of its NAFTA Chapter 11 claims before a consensually-appointed Article 1120 tribunal. The Award is a separate and independent claim that is unrelated to the underlying merits of the case. Failure to

4

provide immediate relief for this Award would render any future relief meaningless if judicial review were delayed until the issuance of a final award on the merits by the challenged tribunal.

16.    The Article 1126 tribunal's Award should be vacated for the reasons to be provided in Tembec's Motion to Vacate.  The grounds to be alleged in Tembec's Motion include evidence of partiality among the arbitrators (9 U.S.C. § 10(2)); arbitrator misconduct or misbehavior prejudicing the rights of a party (9 U.S.C. § 10(3)); that the arbitrators exceeded their powers (9 U.S.C. § 10(4)); and the arbitral award is contrary to public policy, an additional ground upon which courts have vacated arbitral awards.

## CONCLUSION

In accordance with 9 U.S.C. § 12, this Petition constitutes "notice of a motion to vacate the arbitration award."  In the Motion to Vacate, Petitioner will move for an order vacating and setting aside the Award of the NAFTA Article 1126 tribunal for the reasons set forth in that motion, in addition to the reasons provided above.

Respectfully submitted,

Elliot J. Feldman (D.C. Bar No. 418501)
Mark A. Cymrot (D.C. Bar No. 164673)
Michael S. Snarr (D.C. Bar No. 474719)
BAKER & HOSTETLER LLP
1050 Connecticut Ave. N.W.
Suite 1100
Washington D.C.  20036-5304
Tel: (202) 861-1679
Fax: (202) 861-1783
Dated:  December 7, 2005      Counsel for Petitioners Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TEMBEC INC., *et al.*, | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | )     Civil Action No. 05-2345 (RMC) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

This case was dismissed pursuant to the parties' stipulation after the United States and Canada executed the Softwood Lumber Agreement of 2006 ("SLA"), which, *inter alia*, resolved the antidumping and countervailing duty claims of Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc. ("Tembec") against the United States. Tembec filed a motion to reopen this case titled "Notice of Reinstatement or, In the Alternative, Motion Under Rule 60(b)."[1]  In the motion Tembec seeks to withdraw from the stipulation of dismissal or to set it aside under Rule 60(b)(3) because "[t]he United States knowingly misled Tembec." Reply at 3. The United States opposed the motion. The Court held a hearing on March 23, 2007, and took this matter under advisement. As explained below, the Court finds no evidence that the United States knowingly misled Tembec and no basis to reopen the case. The motion to reopen will be denied.

## I.  BACKGROUND

Because U.S. timber interests believed that Canadian companies were "dumping"

---

[1] Although Tembec implies they have a right to reinstate this action by titling their pleading as a "notice," the pleading in fact is a motion seeking relief from the Court.

cheap timber into U.S. markets, the U.S. Department of Commerce and the International Trade Commission imposed various costs on Canadian imported soft woods through a series of antidumping, countervailing duty, and other determinations. Three Canadian softwood producers – Tembec, Canfor Corporation, and Terminal Forest Products Ltd. – filed claims against the United States under the North American Free Trade Agreement ("NAFTA") Chapter Eleven provisions for arbitration. This case initially concerned Tembec's challenge to a September 2005 Consolidation Order by a tribunal constituted under Article 1126 of NAFTA ("Tribunal"), which consolidated the cases of the three Canadian companies. On December 7, 2005, Tembec informed the Tribunal that it "does not recognize that this Tribunal has lawfully assumed jurisdiction over Tembec's Statement of Claim" and that it was removing its claim from the consolidated proceedings. Tembec filed a petition with this Court on the same day, seeking to vacate the Consolidation Order. The Tribunal released Tembec on January 10, 2006.

While a forest may be silent when no one is there to hear, the softwood lumber dispute between the two countries created an uproar. After lengthy discussions, the United States and Canada signed the Softwood Lumber Agreement ("SLA") on September 12, 2006, and set a target date of October 1, 2006, for making it effective. Certain conditions precedent had to be met before the SLA would come into force. One such condition precedent was that a "Termination of Litigation Agreement" ("TLA") would be signed by all parties to the "Covered Actions" identified specifically in the TLA. The TLA was set forth in Annex 2A of the SLA. It expressly stated that all parties to the Covered Actions would bear their own costs.

The TLA did not meet with universal applause from the parties to the 20-odd disputes it was designed to terminate. Some parties signed; some dithered; some re-wrote parts of the TLA;

and some refused altogether. Tembec chose to attempt to revise the TLA to make it more to its liking, including a provision requiring the Government of Canada to pay Tembec 90% of what it was due under the SLA no later than 60 days after the SLA became effective. On September 20, 2006, Tembec signed and submitted individual copies of its revised TLA, separately providing for the settlement of the 11 Covered Actions to which it was a party, including its NAFTA arbitration claim and this lawsuit.

When it became apparent to Canada and the United States that the conditions precedent would not all be met by the target effective date for the SLA, those parties extended that date to no-later-than November 1, 2006. The two governments also negotiated modifications to the SLA to change some of the conditions precedent so that the SLA could go into force by November 1. As a result, the TLA was replaced with a more limited Settlement of Claims Agreement ("SCA") that addressed the termination of only four actions, including Canfor's NAFTA Chapter Eleven claim before the Tribunal and this lawsuit. Tembec's NAFTA Chapter Eleven claim was not listed. According to Tembec, counsel for Canada presented the SCA to Tembec at 6:00 P.M. on October 11, 2006, and Tembec was "informed by Canada's counsel that if the SCA were not executed that night . . . , Tembec would be the cause of the failure of the SLA negotiations." Reply at 3. *See also* Reply at 16 ("Knowing that Tembec had endorsed the Softwood Lumber Agreement, the Government of Canada advised that the agreement would not go forward without counsel's immediate signature.").

In the meantime, counsel for the United States and Tembec had been negotiating a stipulated dismissal of this lawsuit. On October 12, 2006, Tembec and the United States filed a stipulation of dismissal, agreeing to dismiss this action "with prejudice, subject to the terms of the

conditions of the Softwood Lumber Agreement of 2006." Stipulation of Dismissal [Dkt. # 25]

(hereinafter "Stipulation of Dismissal"). The following day, the United States took the position

before the Tribunal that Tembec should bear the entire cost of Tembec's NAFTA Claim, including

the United States' attorneys' fees. Tembec objected, and now seeks to set aside the Stipulation of

Dismissal and reopen this case.

## II. ANALYSIS

### A. Stipulation of Dismissal

Tembec first relies on the language of the Stipulation of Dismissal, arguing that the

Stipulation was expressly subject to the terms of the SLA, the SLA was changed without Tembec's

agreement or knowledge in a way that allows the United States to seek costs from Tembec, and thus

Tembec should not be bound by the Stipulation. This argument holds no water because Tembec is

bound by the plain meaning of the Stipulation of Dismissal. When presented with a contract, the

duty of a court is to give effect to the mutual intentions of the parties. *NRM Corp. v. Hercules Inc.*,

758 F.2d 676, 681 (D.C. Cir. 1985). "Where the language of a contract is clear and unambiguous

on its face, a court will assume that the meaning ordinarily ascribed to those words reflects the

intentions of the parties. Only if the court determines as a matter of law that the agreement is

ambiguous will it look to extrinsic evidence of intent to guide the interpretive process." *Id.* at 681-

82 (citations omitted) (applying federal common law which "dovetails precisely with general

principles of contract law"); *accord Mittal Steel USA ISG, Inc. v. Bodman*, 435 F. Supp. 2d 106, 108-

09 (D.D.C. 2006) (applying general principals of contract law adopted by D.C. law).

The Stipulation of Dismissal is unambiguous; it states that it is "subject to the terms

and conditions of the Softwood Lumber Agreement [SLA] of 2006." It does not state "subject to

the terms of the SLA *as known to Tembec*." Like the Stipulation, the SLA also is unambiguous. It expressly incorporates the terms of the SCA, not the TLA.[2] *See* Resp.'s Opp'n Ex. E, Amendment to the SLA, Art. XI (substitutes the SCA for the TLA at Annex 2A). Paragraph 8 of the SCA provides that "[n]o party to this Claims Settlement Agreement shall seek to hold any other party liable to pay its costs and expenses of litigation relating to any action referenced in this Claims Settlement Agreement." *Id*. Ex. E, SCA ¶ 8. Because Tembec's NAFTA Claim is not referenced in the SCA, it is not subject to the paragraph 8 limitation. The Stipulation of Dismissal, the SLA, and the SCA are clear and unambiguous; they do not preclude the United States from seeking costs related to Tembec's NAFTA Claim.

Tembec contends that the United States knowingly misled Tembec. Tembec argues that the SCA signed by Tembec was not labeled "Annex 2A" at the time of Tembec's signature. If it had been, Tembec implies, Tembec would have been on notice that the SCA replaced the TLA. Because it was not, Tembec claims it was misled into believing that the SCA supplemented, but did not replace, the TLA.

Tembec has not submitted clear and convincing evidence of fraud or misconduct by the United States. First, Canada presented the SCA to Tembec for signature, not the United States. The United States had no reason to know whether or to what extent Canada was sharing information with stakeholders like Tembec. Second, the United States had no duty to explain the terms of the

---

[2] It is uncontested that Tembec revised the TLA, Tembec executed this revised version, and the United States did not execute the TLA. There was no meeting of the minds, and thus the TLA never became a binding contract. *Ekedahl v. COREStaff, Inc.*, 183 F.3d 855, 858 (D.C. Cir. 1999) (applying D.C. law, court noted that party asserting existence of enforceable contract has the burden of proving there has been an agreement, a meeting of the minds).

SLA or the SCA to Canada, with whom it was negotiating,[3] let alone to Tembec. *See Capital Yacht Club v. VESSEL AVIVA*, 409 F. Supp. 2d 1, 7 (D.D.C. 2006) ("defendants have no duty to inform the plaintiff's attorney of the legal consequences" of signing a document).

Third, Tembec's argument that it believed that the SCA supplemented the TLA, and did not replace it, is disingenuous because Tembec should have known that the TLA was replaced by the SCA. Tembec had the opportunity to review the SCA, which is only two pages long, before signing it. Resp. to Petrs.' Supp. Brief Ex. A, Tr. of 1/31/07 Hearing before Tribunal at 78-84. Tembec was at all times represented by counsel. In fact, Tembec's counsel reviewed the SCA and suggested "very modest" changes. *See* Petrs.' Mot. Ex. E, Oct. 11, 2006 Letter from Tembec's Counsel. Tembec's NAFTA Claim plainly was not referenced by the SCA, and Tembec did not question this.

Fourth, it is unreasonable to interpret the SCA as supplemental to the TLA because the two agreements covered some of the same cases, like Canfor's Chapter Eleven claim and Tembec's district court case, and there would be no need to reference the same cases in the SCA if it merely supplemented the TLA.[4] Finally, Tembec was notified by a confidential Canadian source

---

[3] With its supplemental brief, Tembec submitted a letter from Andrea Lyon, Canada's Chief Trade Negotiator. The letter explains Ms. Lyon's interpretation of the SLA, the TLA, and the SCA. She indicates that while the TLA replaced the SCA, the SCA covers Tembec's NAFTA Claim because it covers the consolidated NAFTA claims. Ms. Lyon is in error, as she overlooks the fact that Tembec had previously withdrawn its arbitration claim from the consolidated action. Because Tembec had withdrawn, its NAFTA Claim was not covered by the SCA. Moreover, Ms. Lyon's interpretation of the SLA is not relevant. The Stipulation of Dismissal and the SLA must be construed according to their plain meaning, and the Court does not consider extrinsic evidence of the parties' intent.

[4] The TLA and the SCA also covered some of the same actions, but treated them differently. For example, the case captioned *Coalition for Fair Lumber Imports Executive Committee v. U.S.*, No. 05-1366 (D.C. Cir.), is terminated under the TLA. Petrs.' Mot. Ex. A,

that the U.S. and Canadian governments "could not satisfy certain conditions of the TLA as a condition precedent to the SLA's entry into force, and that they would take other action enabling entry into force, including a possible substitution of the SCA." Petrs.' Supp. Brief at 4 n.1.

Tembec executed the SCA, and it negotiated the Stipulation of Dismissal in this case thereafter. Pet.'s Mot. Ex. F. Tembec initially objected to the proposed stipulation and suggested revisions. *Id.* Counsel for the United States sent an email explaining various revisions and confirming that the Stipulation of Dismissal was pursuant to the SLA. *Id.* After further emails, counsel for both parties agreed to the Stipulation as it was filed with this Court on October 12, 2006. In sum, Tembec is bound by the plain and express terms of the Stipulation of Dismissal, subject to the unambiguous terms of the SLA (including the SCA). Under these agreements, the United States is not barred from seeking attorneys' fees and costs against Tembec.

Tembec also contends that "the United States and Canada agreed that no party would seek costs or fees against any other party in any of the litigation involving softwood lumber from Canada." Petrs.' Notice of Filing [Dkt. # 33].[5] In support of this claim, Tembec submitted documents indicating that the United States has agreed not to seek costs or fees against West Fraser Mills in settlement negotiations with that company. *See West Fraser Mills Ltd. v. United States*, CIT No. 05-79 (pending in the U.S. Court of International Trade). Similarly, Tembec asserts that the United States agreed not to seek cost or fees in settlement of Canfor's Chapter 11 claim or in settlement of Terminal Forest Products' Chapter 11 claim. Petrs.' Notice of Filing [Dkt. # 33] at 1.

TLA at ¶¶ 1-3. Under the SCA, the United States and Canada merely agree to seek dismissal of the same case. Resp.'s Opp'n Ex. E, SCA ¶ 2.

[5] Tembec made this argument at the hearing on this matter, and the Court permitted a supplemental filing.

The fact that other parties were treated differently in other cases is not relevant to the interpretation of the governing documents in this case — the Stipulation of Dismissal, the SLA, or the SCA.[6] Moreover, because the Stipulation of Dismissal, the SLA, and the SCA are clear and unambiguous, the Court must give effect to the intent of the parties and may not examine extrinsic evidence. *NRM Corp.*, 758 F.2d at 681-82. No matter what the agreements were in other cases, the relevant documents in this case do not preclude the United States from seeking fees and costs against Tembec related to Tembec's NAFTA claim.

### B. Request to Set Aside the Judgment under Rule 60(b)(3)

Federal Rule of Civil Procedure 60(b) provides for motions for relief from a judgment or order due to: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct; (4) void judgment; (5) satisfied, released, or discharged judgment; or (6) "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). Tembec moves to set aside the judgment here due to "fraud, misrepresentation, or other misconduct" under Rule 60(b)(3).

In order to prevail under Rule 60(b)(3), Tembec must establish fraud or misconduct, and resulting actual prejudice, by clear and convincing evidence. *Johnson v. Holway*, 2006 WL 3201877, *1 (D.D.C. Nov. 6, 2006). The burden of proof is high because public policy supports protecting the finality of judgments. *Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir.

---

[6] Canfor and West Fraser's claims were both listed in the SCA and thus both were subject to the cost and fees limitation set forth in paragraph 8 of the SCA. *See* Resp.'s Opp'n Ex. E, SCA ¶1 (Canfor), ¶ 5 (West Fraser), ¶ 8 (cost and fees limitation). The settlement of Terminal Forest Products' claim was not covered by the SCA, but was settled separately. Treating these claims in a manner consistent with the terms of the SCA, or in Terminal's case in a manner consistent with the parties' settlement agreement, is not inconsistent with the United States' treatment of Tembec in this case.

2004). "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann v. United States*, 340 U.S. 193, 198 (1950).[7]

    Tembec cannot meet this high standard. As described above, Tembec revised the TLA that Canada presented to it and signed the revised version. There is simply no evidence that the United States led Tembec to believe the United States had accepted the revised TLA. Like the TLA, Canada (not the United States) presented the SCA to Tembec. Based on a review of the SCA by Tembec's counsel and information from a confidential Canadian informant, Tembec had reason to know that the SCA replaced the TLA. Thus, Tembec must be charged with knowledge of the plain terms of the SLA and the SCA. Tembec has not met its burden under Rule 60(b)(3) of demonstrating fraud or misconduct by the United States by clear and convincing evidence.

### III. CONCLUSION

    For the foregoing reasons, the Court will deny Tembec's motion for reinstatement or to set aside judgment under Rule 60(b) [Dkt. # 26]. The unambiguous terms of the Stipulation of Dismissal are binding. A memorializing order accompanies this Memorandum Opinion.


Date: April 19, 2007           /s/
                    ROSEMARY M. COLLYER
                    United States District Judge

---

[7] Tembec does not request relief under the catch all provision, Federal Rule of Civil Procedure 60(b)(6) (relief from judgment may be granted for "any other reason justifying relief from the operation of judgment"). Even if it had, such relief would be inappropriate because Rule 60(b)(6) applies only in extraordinary circumstances. *Kramer v. Gates*, No. 05-5385, slip op. at 6 (D.C. Cir. Mar. 6, 2007) (citing *Ackermann*, 340 U.S. at 199). "Rule 60(b)(6) 'should be only sparingly used' and may not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.'" *Kramer*, slip op. at 7 (quotations omitted) (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)).

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

In the Matter of the Arbitration between   )
   )
TEMBEC INC., TEMBEC INVESTMENTS   )
INC., and TEMBEC INDUSTRIES INC.   )
   )
800 René Lévesque Boulevard Ouest   )
Suite 1050   )
Montréal, Québec H3B 1X9   )
   )
               Petitioners,   )   Case No._____
   and   )
   )
THE UNITED STATES OF AMERICA;   )
CANFOR CORPORATION; and TERMINAL   )
FOREST PRODUCTS LTD.   )
   )
               Respondents.   )

RECEIVED
U.S. COURT OF APPEALS
FOR THE D.C. CIRCUIT
2007 OCT 19   PM 5: 59
FILING DEPOSITORY

## PETITION TO VACATE ARBITRATION AWARD

1.      Petitioners, Tembec Inc., Tembec Investments Inc., and Tembec Industries, Inc. ("Tembec"), located at 800 René Lévesque Boulevard Ouest, Suite 1050, Montréal, Québec H3B 1X9, bring this Petition to vacate an arbitration award issued against Tembec in favor of the United States of America ("United States"), Canfor Corporation ("Canfor"), and Terminal Forest Products Limited ("Terminal") (collectively the "Respondents") in accordance with 9 U.S.C. § 1 et seq.

2.      Tembec provided a "Notice Of Filing Of Petition To Vacate Arbitration Award" to the Respondents, which notified Respondents in accordance with 9 U.S.C. § 12 that Tembec will file a "Motion to Vacate the Arbitration Award" ("Motion to Vacate"), pursuant to 9 U.S.C. §§ 10 and 12 of the Federal Arbitration Act ("FAA"). In the Motion to Vacate, Petitioner will move for an order vacating the final award of the

North American Free Trade Agreement ("NAFTA") Article 1126 tribunal delivered on

August 2, 2007 in *Canfor Corporation v. United States of America, Tembec Inc. et al v.*

*United States of America, and Terminal Forest Products Ltd. v. United States of*

*America* in favor of the Respondents (the "Award").

       3.    Tembec respectfully requests that the Court convene a status

conference within thirty days of the filing of this Petition in order to set a briefing

schedule for filing and responses to Tembec's Motion to Vacate.

       4.    This Petition and its accompanying Notice were filed and served on

October 19, 2007, less than three months from the delivery of the Award, and therefore

were timely submitted pursuant to 9 U.S.C. § 12.

## FACTUAL BACKGROUND

       5.    Tembec submitted to a NAFTA Article 1120 tribunal claims for

arbitration against the United States for violating its obligations to Tembec and its U.S.

investments under Chapter 11 of NAFTA.

       6.    Tembec alleged in its NAFTA Chapter 11 claims that the United

States applied its antidumping and countervailing duty laws to Tembec and its

investments in an arbitrary, unfair, and discriminatory manner in violation of Articles

1102, 1103, 1105 and 1110 of NAFTA.

       7.    The United States' breached its NAFTA Chapter 11 obligations to

Tembec when, on May 22, 2002, it issued unlawful antidumping and countervailing duty

orders on softwood lumber imported from Canada, authorizing the collection of duty

deposits ranging up to 29% *ad valorem*.

8.      The collection of these duty deposits was found to be unlawful by the World Trade Organization, NAFTA appeal tribunals and the U.S. Court of International Trade.  Tembec initiated the arbitration proceedings to recover more than $200 million in damages caused to Tembec and its investments by these unlawful duties.

9.      At Tembec's request, a NAFTA Article 1120 tribunal was formed on August 4, 2004, to adjudicate Tembec's NAFTA Chapter 11 claims in the matter of *Tembec Inc. et al. v. United States*.  Tembec appointed Professor James Crawford of Australia, the United States appointed Professor Kenneth Dam of the United States of America, and ICSID appointed Judge Florentino Feliciano of the Philippines with the consent of both the United States and Tembec.  Neither Tembec nor the United States had objections as to any of the Article 1120 tribunal members or the formation of the tribunal.

10.      On the eve of the jurisdictional hearing, the United States sought to terminate the Article 1120 tribunal by submitting a request to the International Centre for the Settlement of Investment Disputes ("ICSID") to consolidate Tembec's NAFTA Chapter 11 claims with claims by Canfor and Terminal, two other Canadian softwood lumber producers.

11.      ICSID complied with the request for consolidation despite Tembec's objections that the United States' request had been made too late, was inconsistent with past practice, and was inappropriate considering the differences in the cases.  ICSID appointed a new Article 1126 "consolidation" tribunal who stayed Tembec's Article 1120 arbitration proceedings, even though the appointment of two of the Article 1126 tribunal

members still was subject to challenge under the governing UNCITRAL Rules of Arbitration. The Article 1126 tribunal violated the UNCITRAL Rules when it proceeded with the arbitration while the arbitrators were subject to challenge by the parties.

12.    Tembec objected to the appointment of Mr. Davis Robinson to the Article 1126 tribunal on the bases that (a) his wife is a Walker and near cousin to the President of the United States, and the President has been personally and directly involved in the softwood lumber actions against Canada; (b) Mr. Robinson previously served as head of the legal office representing the United States in the arbitration; and (c) his selection by ICSID was made from a small list of arbitrators officially appointed by the United States. These factors raised "justifiable doubts" under Article 10 of the UNCITRAL Rules as to Mr. Robinson's ability to remain impartial and independent in adjudicating Tembec's claims against the United States.

13.    Tembec requested that Mr. Robinson withdraw from the Article 1126 tribunal, and was joined in that request by Canfor and Terminal. Mr. Robinson, however, refused to withdraw from the tribunal even though all parties except the United States had objected.

14.    Mr. Robinson had been selected for the Article 1126 tribunal by ICSID from a small, pre-screened list of candidates chosen by the United States, even though none of the members of the Article 1126 tribunal had been selected by Tembec. The Article 1126 tribunal unfairly represented the United States' preferences for arbitrators to determine whether Tembec's Article 1120 arbitration proceedings should be terminated, and to adjudicate Tembec's NAFTA Chapter 11 claims against the United States.

15.    The Article 1126 tribunal refused to stay its own proceedings or lift its stay of Tembec's Article 1120 proceedings while the challenge to Mr. Robinson remained pending.

16.    The Article 1126 tribunal required a hearing and the submission of briefs, then decided on September 7, 2005 to consolidate the claims of Tembec, Canfor and Terminal, to assume jurisdiction over all of the claims, and to terminate Tembec's Article 1120 tribunal.

17.    Tembec saw that it would be futile to proceed with its claims before the biased Article 1126 tribunal and requested, pursuant to Article 34 of the UNCITRAL Rules, that the consolidated arbitration proceedings be terminated with respect to Tembec.

18.    At the same time, Tembec initiated an action in the U.S. District Court for the District of Columbia seeking to vacate the Article 1126 tribunal's September 7, 2005 decision to consolidate the claims of Tembec, Canfor and Terminal against the United States and to terminate Tembec's Article 1120 tribunal.

19.    The United States objected to Tembec's request and sought to keep Tembec in the consolidated proceedings so that the Article 1126 tribunal could issue a decision against Tembec.

20.    On January 10, 2006, the tribunal granted Tembec's request to terminate the proceedings and concluded that it did not have authority to rule whether the termination was with or without prejudice to Tembec's claims.  In its order, the tribunal said that it would not decide the allocation of arbitration costs until a later date.

21.     During the summer of 2006, as Canadian softwood lumber companies continued to win legal victories against the United States concerning the unlawfulness of the antidumping and countervailing duty orders, the United States and Canada reached an agreement intended to settle all of the claims against the United States.  Pursuant to the 2006 Softwood Lumber Agreement ("SLA"), the United States refunded all of the five billion dollars of antidumping and countervailing duty deposits collected on softwood lumber, and Canada returned one billion dollars of those deposits to the United States and the U.S. lumber industry.

22.     Canada and the United States also agreed that all of the pending softwood lumber litigation (more than thirty separate cases involving hundreds of Canadian companies) would be terminated without costs or fees to be claimed by either side.

23.     In accordance with these SLA terms, Tembec stipulated, in an agreement with the United States, to dismiss its action in U.S. District Court for the District of Columbia to vacate the Article 1126 tribunal's September 7, 2005 consolidation award prior to any decision being issued on the merits.

24.     Subsequently however, the United States contended that Tembec's NAFTA Chapter 11 claim was the sole exception to the SLA, which was represented to be a universal settlement agreement, and pressed its claim for arbitration costs from Tembec before the NAFTA Article 1126 tribunal.

25.     Tembec submitted evidence to the tribunal that the United States was not entitled to claim costs of arbitration under the SLA from Tembec or any other Canadian party to the softwood lumber litigation, and even provided a statement from

the Government of Canada confirming that there never was any intention to expose Tembec uniquely to a U.S. claim for costs and legal fees.

26.    Tembec also pointed out that the United States should not be entitled to recover its costs of arbitration when there never had been any briefing on the substance of Tembec's claims and the Article 1126 tribunal already had declared that it had no authority to declare Tembec's removal from the proceedings "with prejudice."

27.    Not only did the Article 1126 tribunal accept all of the United States' demands for costs from Tembec, but the tribunal also entered an award requiring Tembec to pay additional costs to Canfor and Terminal, which had never requested a cost award against Tembec.  On August 2, 2007, the tribunal delivered an award ordering Tembec to pay $271,844.24 to the United States, and $32,628.15 to each of Canfor and Terminal.

28.    The United States did not seek any arbitration costs or legal fees from Canfor or Terminal, neither of whom challenged the Article 1126 tribunal's authority in U.S. court, nor were they required by the tribunal to pay any arbitration costs or legal fees to the United States even though they continued to litigate their claims against the United States before the tribunal long after Tembec had removed itself from the proceedings.

29.    Tembec asked the U.S. District Court to nullify its stipulation to dismiss the action to vacate the September 7, 2005 consolidation award based on the misrepresentations by the United States that the SLA settled all softwood lumber claims, including Tembec's NAFTA Chapter 11 arbitration.  The court denied Tembec's request.  The Award of costs and fees followed.

30.    Thus, the Article 1126 tribunal's Award of costs and fees leaves Tembec in the unique position of being the only one of hundreds of Canadian lumber companies charged with paying the United States' costs and legal fees arising in connection with any and all aspects of the softwood lumber dispute.

31.    The Award against Tembec was rendered by a tribunal of arbitrators which included a near cousin of the President of the United States, Tembec's opponent in arbitration, who had been legal counsel to Tembec's opponent, had enjoyed patronage appointments from the President's father, and had been pre-screened for approval by Tembec's opponent while no comparable opportunity had been provided to Tembec.

32.    Tembec was the only Canadian company in the NAFTA Chapter 11 proceedings to challenge the authority of the tribunal, and the only company that the tribunal subjected to a punitive award of costs in favor of the United States.

### CLAIM FOR RELIEF

## I.    PETITION TO VACATE AWARD

33.    The Article 1126 tribunal's Award constitutes a final award under 9 U.S.C. § 10 that is appropriate for judicial review.

34.    The Court should find that the Article 1126 tribunal had no authority to conduct the consolidated NAFTA Chapter 11 arbitration proceedings. The grounds to be alleged in Tembec's Motion to Vacate will include evidence of partiality among the arbitrators (9 U.S.C. § 10(2)); arbitrator misconduct or misbehavior prejudicing the rights of a party (9 U.S.C. § 10(3)); that the arbitrators exceeded their powers (9 U.S.C. § 10(4)); and the arbitral award is contrary to public policy, an additional ground upon which courts have vacated arbitral awards. For these reasons, the Article 1126

tribunal's Award, and all of the tribunal's orders leading up to the final arbitration award, should be vacated.

## CONCLUSION

In accordance with 9 U.S.C. § 12, Petitioner has provided "notice of a motion to vacate the arbitration award." In the Motion to Vacate, Petitioner will move for an order vacating and setting aside the Award of the NAFTA Article 1126 tribunal for the reasons set forth in that motion, in addition to the reasons provided above.

Respectfully submitted,

Mark A. Cymrot (D.C. Bar No. 164673)
Elliot J. Feldman (D.C. Bar No. 418501)
Michael S. Snarr (D.C. Bar No. 474719)
BAKER & HOSTETLER LLP
1050 Connecticut Ave. N.W.
Suite 1100
Washington D.C. 20036-5304
Tel: (202) 861-1679
Fax: (202) 861-1783
Dated: October 19, 2007    Counsel for Petitioners Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc.

In the Consolidated Arbitration Pursuant to Article 1126
of the North American Free Trade Agreement (NAFTA)
and the UNCITRAL Arbitration Rules
between


CANFOR CORPORATION
v.
UNITED STATES OF AMERICA


TEMBEC *ET AL.*
v.
UNITED STATES OF AMERICA

AND

TERMINAL FOREST PRODUCTS LTD.
v.
UNITED STATES OF AMERICA


# JOINT ORDER
## ON THE
## COSTS OF ARBITRATION
## AND FOR THE
## TERMINATION OF CERTAIN ARBITRAL PROCEEDINGS


Before the Arbitral Tribunal established under Article 1126 of the NAFTA and
comprised of:

Professor Armand L.C. de Mestral, Arbitrator
Davis R. Robinson, Esq., Arbitrator
Professor Albert Jan van den Berg, Presiding Arbitrator

Secretary of the Tribunal:
Mr. Gonzalo Flores, ICSID

Washington, D.C., 19 July 2007

I.     INTRODUCTION

1.     To consider and decide on costs in international arbitration is a relatively simple exercise.  Not so in this case.  The controversy between Claimant Tembec, Inc., Tembec Investments, Inc., and Tembec Industries, Inc. (together, "Tembec") and Respondent United States of America (the "United States") over the allocation of costs has consumed unusual amounts of time and energy, not only by the two parties but by the Tribunal as well.

2.     The allocation of costs as between Claimants Canfor Corporation ("Canfor") and Terminal Forest Products Ltd. ("Terminal") and Respondent United States, on the other hand, is a more mundane affair not only because of the express terms of the 12 October 2006 Softwood Lumber Agreement between the Governments of Canada and the United States and an annex thereto but also because of the actions subsequently taken by Canfor, Terminal and the United States, all as more fully explained in this Joint Order.

3.     The costs debate between Tembec and the United States has required not less than four rounds of written submissions, a questionnaire of the Tribunal with more than twenty-five questions, answers by these two parties to those questions, and a separate hearing on the subject.  That extensive pleading between the two may seem surprising in light of the amount of legal costs claimed by the United States: to wit, some US$ 150,000 (not including reimbursement of its advances on costs).  This amount may be contrasted with the US$ 242 million that was paid to Tembec within less than three weeks after the Softwood Lumber Agreement entered into force on 12 October 2006.  However, the United States submits that this contentious issue between Tembec and the United States constitutes a matter of principle: the United States argues that it is entitled to costs "because Tembec abandoned its claim on the eve of the jurisdictional hearing . . . ," and that the failure to award costs in favour of the United States under the circumstances

4

"would open the door to abusive tactics by future Chapter Eleven claimants."[1] The issue also involves grave accusations by these two parties against each other. The United States contends that Tembec has misled the Tribunal, while Tembec asserts misrepresentation, undue influence, duress, coercion, and bad faith by the United States. Those circumstances and accusations have thereby necessitated an order on costs of an extraordinary length.

4.    As an introductory matter, the Tribunal notes that, by its Order of 10 January 2006, the Tribunal terminated these NAFTA Article 1126 consolidated proceedings with respect to Claimant Tembec, save for the costs of arbitration, as further described herein. Thus, this final Joint Order of the Tribunal constitutes both (i) an order for the termination of the arbitral proceedings with respect to the other two Claimants, Canfor and Terminal, as well as with respect to the Respondent, the United States, and (ii) an order on the allocation of the costs of the consolidated arbitration with respect to the three Claimants and the Respondent.

## II.    RELEVANT COSTS PROVISIONS OF THE UNCITRAL ARBITRATION RULES

5.    Before addressing the facts and procedure, it is useful to quote at the outset the relevant provisions contained in Articles 38 to 40 ("Costs") of the UNCITRAL Arbitration Rules:

### Article 38

The arbitral tribunal shall fix the costs of arbitration in its award. The term "costs" includes only:

(a)  The fees of the arbitral tribunal to be stated separately as to each arbitrator and to be fixed by the tribunal itself in accordance with article 39;

---

[1]    United States submission of 4 December 2006 at p. 10.

2.3 Accordingly, at present, the Tribunal rejects Tembec's request in its letter of 7 December 2005 that "the Tribunal order its Secretary to . . . make a final accounting of arbitration fees and costs up until today's date" and to "provide a refund to Tembec of any remaining balance of the deposit paid."

### 3.    Competence

3.1 The Tribunal notes the pendency of Tembec's Petition and Notice of Motion to Vacate Arbitration Award, i.e., the Tribunal's Consolidation Order of 7 September 2005, filed with the United States District Court for the District of Columbia on 7 December 2005.

3.2 In regard of Sub-section 3.1 above, the Tribunal further notes that it is unaware of any applicable existing international or national law or other governing circumstance that affects the Tribunal's competence to decide any matters before it, including but not limited to the issuance of this Order for Termination of the present proceedings with respect to Tembec.

12.    The Article 1126 proceedings thereafter continued only with Canfor, Terminal and the United States, subject, however, to the reservation for costs in the previously recited Tembec Termination Order.    A hearing on the preliminary question referred to in ¶ 9 above was held in Washington on 11-12 January 2006.

13.    On 7 February 2006, Tembec filed a "Motion to Vacate Arbitration Award" and a Memorandum in support of the Motion with the U.S. District Court for the District of Columbia, seeking a setting aside of the Consolidation Order.[5]

14.    Canfor, Terminal and the United States filed Cost Submissions in the present NAFTA Article 1126 proceedings on 7 April 2006.  The Submission on Costs of the United States was accompanied by witness statements of Mr. Gregory K. Holobaugh (Budget Analyst in the Office of the Executive Director of the Legal

---

[5]    Civil Action No. 05-2345. Available online at: http://www.state.gov/documents/organization/64890.pdf.

11

20.    Paragraph 5 of the TLA provided:

> No party to this Termination Agreement shall seek to hold any other party liable to pay its costs and expenses of litigation relating to the Covered Actions.

21.    In the letter of 8 September 2006, the recipients were asked to do, *inter alia*, the following:

> You are either counsel for, or an authorized representative of, one or more parties or participants to one or more Covered Actions. The TLA, two copies of which are enclosed, therefore provides a designated line for your signature. We ask that you indicate you client's (or clients') agreement to the termination of the actions to which they are a party by signing and dating, on the line above your name, each copy of the TLA and returning your signature pages to the Government of Canada and the Government of the United States. (In accordance with paragraph 12 of the TLA, it is being signed in counterpart.)

22.    On 12 September 2006, Canada and the United States executed the SLA 2006.[13] As mentioned above, Article II ("Entry into force") provided in relevant part:

> 1.    The SLA 2006 shall enter into force on a date designated by the Parties in an exchange of letters (the "Effective Date"). The exchange of letters shall confirm that:
>
> (a) the Termination of Litigation Agreement in Annex 2A has been signed:
>
> (i) by counsel on behalf of all represented parties and participants to the actions set out in the Termination Agreement, and
>
> (ii) by authorized representatives of any unrepresented parties or participants to the actions set out in the Termination Agreement;

---

[13]    Annex (i) to the Unites States' letter to the Tribunal of 16 November 2006; *see* ¶ 60 *infra*. Available online at: http://www.international.gc.ca/eicb/softwood/pdfs/SLA-en.pdf.

15

"(a) the Settlement of Claims Agreement in Annex 2A has been signed by counsel on behalf of the parties set out therein;"

54.    Second, the SLA 2006 Amendments added the following provision:

ARTICLE XI

Annex 2A [i.e., TLA] of the SLA 2006 shall be deleted and replaced by Annex 2A [i.e., the SCA].

55.    Less successful was the United States' motion to dismiss the CIT action (Consol. Court No. 05-00028), filed in the evening of 12 October 2006, as contemplated by paragraph 2 of the SCA, since the CIT denied the motion and granted Tembec's motion for summary judgment, in a judgment of 13 October 2006.[37]  By Motion for Reconsideration and to Vacate Tembec II dated 13 November 2006, the United States requested the CIT to vacate its judgment and dismiss the case as moot.[38]

56.    Tembec asserts that it learned of the amendments to the SLA 2006 only when they were made public in the course of 13 October 2006 and after it had signed the SCA on 11 October 2006 and agreed to the stipulation on 12 October 2006. But it is difficult for the Tribunal not to conclude that Tembec was aware of the increasing problems experienced by both Governments late in September of 2006 in seeking to implement the SLA 2006 and the TLA as drafted.  Its counsel, Mr. Feldman, was aware of these difficulties as was evidenced in his letter of 5 October 2006 to the CIT, quoted in ¶ 32 above, which letter the United States disclosed to the Tribunal on 13 October 2006.

57.    In this 13 October 2006 communication to the Tribunal, the United States submitted to this Tribunal a response to Tembec's submission of 6 October 2006.[39]

---

[37]    Exhibit E to the United States' submission to the Tribunal of 4 December 2006.

[38]    Exhibit G to the United States' submission to the Tribunal of 4 December 2006.

[39]    See ¶¶ 35-37 supra.

28

In that letter, the United States requested the Tribunal to reject Tembec's request to allocate the costs of the Tembec arbitration equally between the parties and to order Tembec to bear all costs and fees incurred by the United States in defending against Tembec's NAFTA Chapter Eleven claim. The United States argued, *inter alia*, that Tembec's NAFTA Chapter Eleven Claim was not among the claims terminated pursuant to the SCA. The United States also asserted that the document attached to Mr. Feldman's letter of 6 October 2006 to the Tribunal "labeled Annex 2A, Termination of Litigation Agreement, is not a true and correct copy of the Settlement of Claims Agreement which was concluded in connection with the Softwood Lumber Agreement," and that that "document was not counter-signed on behalf of the United States." The United States further contended that "Tembec's attempt to mislead the Tribunal by asserting that its claim was terminated pursuant to the Softwood Lumber Agreement, when the same claim was terminated nine months earlier, should not be countenanced . . ."

58.  Tembec reacted on 8 November 2006 by filing with the U.S. District Court for the District of Columbia a Notice of Reinstatement of Action or in the Alternative Rule 60(b) Motion to Set Aside Stipulation of Dismissal.[40] Tembec argued that "the stipulation of dismissal was subject to the terms of the SLA but that the terms of the SLA were changed without Tembec's agreement or knowledge." Tembec alternatively moved "for relief from the dismissal order pursuant to Rule 60(d) based on the United States' misrepresentation and misconduct regarding the applicable terms of the SLA."

59.  Having attempted in vain to organize a hearing on the issues that had arisen regarding the costs of arbitration in the course of November 2006, the Tribunal invited in its letter of 9 November 2006, *inter alia*, (i) Canfor, Tembec *et al.* and

---

[40]     Exhibit F to the United States' submission to the Tribunal of 4 December 2006. Exhibit A-2 to Tembec's submission to the Tribunal of 30 January 2007.

XII.   DECISIONS

For the foregoing reasons, the Tribunal renders the following decisions:

(1)   TERMINATES (i) the present proceedings with respect to Canfor, Terminal and the United States, and (ii) the proceedings with respect to Tembec insofar as costs are concerned, the latter proceedings having already been terminated in all other respects by the Tribunal's Termination Order of 10 January 2006;

(2)   DETERMINES that Canfor, Terminal and the United States bear their own costs pursuant to their respective agreements;

(3)   DETERMINES that Tembec shall have to bear the costs of arbitration referred to in Articles 38 and 39 of the UNCITRAL Arbitration Rules insofar as it concerns the NAFTA Article 1120 and Article 1126 proceedings between it and the United States;

(4)   NOTES that the fees and expenses of the Article 1120 Tribunal in *Canfor*, which amount to US$ 372,623.25, and the fees and expenses of the Article 1120 Tribunal in *Tembec* and ICSID's administrative charges in the latter proceedings, which amount to US$ 34,329.15, have been paid out of the advances made by Canfor, Tembec and the United States, the surplus having been refunded to Canfor, Tembec and the United States;

(5)   NOTES that the fees and expenses of the Article 1126 Tribunal and the administrative charges of ICSID, which amount to US$ 995,509.59, have been paid out of the advances made by Canfor, Tembec, Terminal and the United States, the surplus of which (US$ 4,490.41) shall be refunded by ICSID to Canfor (20%), Tembec (10%), Terminal (20%) and the United States (50%);

89

(6)    NOTES that Canfor, Terminal and the United States have advanced more than
their respective share of such costs as determined in this Joint Order with
respect to all parties, to the effect that Tembec owes Canfor and Terminal
US$ 32,628.15 each and the United States US$ 164,807.25;

(7)    ORDERS Tembec to pay Canfor and Terminal US$ 32,628.15 each for the
costs referred to in Decision (6) above, within 15 (fifteen) days after the date
of notification of this Joint Order; and

(8)    ORDERS Tembec to pay the United States US$ 271,844.24, which amount
comprises US$ 12,316.31 for the NAFTA Article 1120 proceedings, US$
94,720.68 for legal costs in both the Article 1120 and the Article 1126
proceedings and US$ 164,807.25 for the costs referred to in Decision (6)
above, within 15 (fifteen) days after the date of notification of this Joint
Order.

90

Made in Washington, D.C., this 19th of July 2007,


THE TRIBUNAL:


_____                              _____
        [s]                                                   [s]
Professor Armand L.C. de Mestral                      Davis R. Robinson, Esq.
        Arbitrator                                          Arbitrator



              _____
                      [s]
              Professor Albert Jan van den Berg
                   Presiding Arbitrator

**ANNEX 2A**

**SETTLEMENT OF CLAIMS AGREEMENT**

1.      On the Effective Date of the Softwood Lumber Agreement 2006, this Settlement of Claims Agreement (Claims Settlement Agreement) will constitute a full and complete settlement of the claims asserted in the actions referenced in this paragraph.  On the Effective Date, Canada and the United States shall file a joint stipulation of dismissal of Canada's complaint in *Canada v. United States* (Ct. No. 05-00033 (CIT)).  Further, on the Effective Date:

> The United States and Tembec Inc. and its affiliates shall file a joint stipulation of dismissal in *Tembec et al. v. United States* (Civil Action No. 05-2345 (U.S. District Ct. for the District of Columbia));

> the United States shall withdraw its request for an Extraordinary Challenge in *Certain Softwood Lumber Products from Canada*, Secretariat File No. ECC-2006-1904-01USA; and

> Canfor Corporation shall withdraw its claim against the United States in *The Consolidated Arbitration Pursuant to Article 1126 of the North American Free Trade Agreement (NAFTA) and the UNCITRAL Arbitration Rules between Canfor Corporation v. United States of America and Terminal Forest Products Ltd. v. United States of America.*

2.      In addition, on the Effective Date, Canada and the United States shall seek to dismiss the following actions:

> *Certain Softwood Lumber Products from Canada (Original AD Investigation)*, Secretariat File No. USA-CDA-2002-1904-02;

> *Tembec v. United States* (Consol. Ct. No. 05-00028 (CIT)) and the cases consolidated therein; and

> *Coalition for Fair Lumber Imports Executive Committee v. United States (Civil Action No. 05-1366 (D.C. Cir.)).*

3.      The United States shall ensure that the following actions are taken:

> (a)      On the Effective Date, the U.S. Department of Commerce ("USDOC") shall retroactively revoke the Countervailing Duty Order regarding Certain Softwood Lumber from Canada, 67 Fed. Reg. 36,070 (May 22, 2002), as amended, and the Antidumping Duty Order regarding Certain Softwood Lumber from Canada, 67 Fed. Reg. 36,068 (May 22, 2002), as amended (the "Orders"), in their entirety as of May 22, 2002 without the possibility that they could be reinstated;

> (b)      On the Effective Date, USDOC shall terminate all USDOC proceedings related to the Orders; and

(c)     No later than 3 days after the Effective Date, to the extent that USDOC is not enjoined against providing for liquidation, USDOC shall provide the instructions in Annex 3A of the SLA 2006 to U.S. Customs and Border Protection to cease collecting cash deposits and to liquidate entries covered by the Orders described in subparagraph 3(a) without regard to antidumping or countervailing duties and to pay interest in accordance with section 778 of the Tariff Act of 1930, as amended.

4.     Following the Effective Date, Canada and the United States shall continue to seek modification or clarification of the injunctions in *West Fraser v. United States* (Consol. Ct. No. 05-00079 (CIT)) such that the underlying entries may be liquidated without regard to antidumping and countervailing duties.  To the extent that USDOC is not enjoined against providing for liquidation, USDOC shall provide the instructions in Annex 3B of the SLA 2006, as amended, to USCBP at such time as the U.S. Court of International Trade modifies or clarifies the injunctions against liquidation issued in *West Fraser v. United States* to permit the United States to liquidate entries covered by the first AD administrative review, the liquidation of which had been enjoined.

5.     As promptly as possible after the Effective Date, Canada and the United States shall file joint motions to dismiss the following actions, if they have not been dismissed already, on the grounds of mootness:

*Certain Softwood Lumber Products from Canada (CVD 1st Administrative Review)*, Secretariat File No. USA-CDA-2005-1904-01; and

*West Fraser v. United States* (Consol. Ct. No. 05-00079 (CIT)).

6.     For purposes of paragraphs 7 through 10, *Certain Softwood Lumber Products from Canada (Original CVD Investigation)*, Secretariat File No. USA-CDA-2002-1904-03 shall be treated in the same manner as an "action referenced in this Claims Settlement Agreement".

7.     Canada and the United States shall request dismissal of any new lawsuits concerning the same subject matter as any action referenced in this Claims Settlement Agreement that are filed before the date of entry into force of the SLA 2006.

8.     No party to this Claims Settlement Agreement shall seek to hold any other party liable to pay its costs and expenses of litigation relating to any action referenced in this Claims Settlement Agreement.

9.     This Claims Settlement Agreement is without prejudice to the position of any party to this Claims Settlement Agreement on any issue in any action referenced in this Claims Settlement Agreement.

10.     Each party to this Claims Settlement Agreement shall not re-file any of the actions that are referenced in paragraph 1 of this Claims Settlement Agreement.

11.     This Claims Settlement Agreement may not be altered, amended, modified, or otherwise changed other than through the written agreement of all parties hereto.

12.     This Claims Settlement Agreement shall bind the parties, their officers, directors, employees, predecessors, subsidiaries, heirs, executors, administrators, agents, successors, and assigns.

13.    As evidence of their consent to this Claims Settlement Agreement, the parties, through their duly authorized Representatives, have signed below.

14.    This Claims Settlement Agreement may be executed in counterparts, each one of which shall be deemed an original and all of which together shall constitute one and the same Claims Settlement Agreement.


By: _____ Dated: _____, 2006
**M. Jean Anderson**
Weil, Gotshal & Manges, LLP
1300 Eye Street, NW.
Suite 900
Washington, DC 20005

Counsel for the Government of Canada in all the referenced proceedings other than *Tembec et al. v. United States* (Civil Action No. 05-2345 (U.S. District Ct. for the District of Columbia)) and the *Consolidated Arbitration Pursuant to Article 1126 of the North American Free Trade Agreement (NAFTA) and the UNCITRAL Arbitration Rules between Canfor Corporation v. United States of America and Terminal Forest Products Ltd. v. United States of America*


By: _____ Dated: _____, 2006
**Seth P. Waxman**
Wilmer, Cutler, Pickering, Hale & Dorr, LLP
1875 Pennsylvania Avenue, NW.
Washington, DC 20006-3642

Counsel for the Government of Canada in *Coalition for Fair Lumber Imports Executive Committee v. United States* (Civil Action No. 05-1366 (D.C. Cir.))


By: _____ Dated: _____, 2006
**Reginald T. Blades, Jr.**
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
1100 L Street, NW.
8th Floor
Washington, DC 20530

Counsel for the United States in W*est Fraser v. United States* (Consol. Ct. No. 05-00079 (CIT)) and the cases consolidated therein


By: _____ Dated: _____, 2006
**Stephen C. Tosini**
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
1100 L Street, NW.
Room 12020
Washington, DC 20530

Counsel for the United States in *Tembec v. United States* (Consol. Ct. No. 05-00028 (CIT)) and the cases consolidated therein

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| TEMBEC INC., TEMBEC INVESTMENTS ) INC., TEMBEC INDUSTRIES INC., ) ) Petitioners, ) ) v. ) ) UNITED STATES OF AMERICA, ) ) Respondent. ) _____) | No. 05-CV-2345 (RMC) |

## STIPULATION OF DISMISSAL WITH PREJUDICE

Pursuant to Fed. R. Civ. P. 41(a)(1), the parties herewith stipulate that this civil action

brought by Tembec, Inc. Tembec Investments Inc., and Tembec Industries, Inc. (collectively

Petitioners), against Respondent the United States of America is dismissed with prejudice,

subject to the terms and conditions of the Softwood Lumber Agreement 2006.  The parties agree

that each will bear its own costs and attorneys fees.

Respectfully submitted,

                                                            ___/s/ Elliot J. Feldman_____
                                                            Elliot J. Feldman (D.C. Bar No. 418501)
                                                            Mark A. Cymrot (D.C. Bar No. 164673)
                                                            Michael S. Snarr (D.C. Bar No. 474719)
                                                            BAKER & HOSTETLER LLP
                                                            1050 Connecticut Ave. N.W.
                                                            Suite 1100
                                                            Washington D.C. 20036-5304
                                                            Tel: (202) 861-1679 — Fax: (202) 861-1783
Dated: October 12, 2006                  *Counsel for Petitioners*


                                                            ___/s/ Alexander K. Haas_____
                                                            Peter D. Keisler
                                                            Assistant Attorney General
                                                            Jeffrey A. Taylor

United States Attorney
Vincent M. Garvey
Deputy Branch Director
Alexander K. Haas (CA 220932)
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
Post Office Box 883, Room 1030
Washington, D.C.  20044
Tel: (202) 307-3937  Fax:  (202) 616-8460
Dated: October 12, 2006                *Counsel for Respondent*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| TEMBEC INC., TEMBEC INVESTMENTS INC., TEMBEC INDUSTRIES INC., | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) ) | No. 05-CV-2345 (RMC) |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) ) ) | |

**NOTICE OF REINSTATEMENT OF ACTION OR IN THE ALTERNATIVE**
**RULE 60(b) MOTION TO SET ASIDE STIPULATION OF DISMISSAL**

Petitioners, Tembec Inc., Tembec Investments Inc., and Tembec

Industries Inc. (collectively "Tembec") submit this notice to inform the Court that Tembec

is exercising the condition set forth in the Stipulation of Dismissal executed on October

12, 2006 to withdraw the stipulation and proceed with this action. In the alternative,

Tembec moves this Court to set aside the stipulation of dismissal pursuant to F.R.Civ.P.

Rule 60(b). A memorandum and proposed order are attached.

Respectfully submitted,

_____/s/_____
Elliot J. Feldman (D.C. Bar No. 418501)
Mark A. Cymrot (D.C. Bar No. 164673)
Michael S. Snarr (D.C. Bar No. 474719)
BAKER & HOSTETLER LLP
1050 Connecticut Ave. N.W.
Suite 1100
Washington D.C. 20036-5304
Tel: (202) 861-1679
Fax: (202) 861-1783
*Counsel for Petitioners*

Dated: November 8, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| TEMBEC INC., TEMBEC INVESTMENTS INC., TEMBEC INDUSTRIES INC., | ) ) ) ) |
| Petitioners, | ) ) |
| v. | ) ) ) **No. 05-CV-2345 (RMC)** |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) ) ) |

### NOTICE OF REINSTATEMENT OF ACTION OR IN THE ALTERNATIVE MEMORANDUM IN SUPPORT OF RULE 60(b) MOTION TO SET ASIDE STIPULATION OF DISMISSAL

Petitioners, Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc. (collectively "Tembec"), submit this notice to inform the Court that Tembec is exercising the condition set forth in the Stipulation of Dismissal executed on October 12, 2006 to withdraw the stipulation and proceed with this action. In the alternative, Tembec moves this Court to set aside the Stipulation of Dismissal and Order of the Court dated October 17, 2006 pursuant to F.R.Civ.P. Rule 60(b).

### FACTUAL BACKGROUND

On September 12, 2006, the United States and Canada entered into the Softwood Lumber Agreement ("SLA") between the Government of Canada and the Government of the United States (collectively "Governments").[1] Article II, Entry into Force, provided conditions precedent to the entry into force of the SLA, including the

---

[1] Article II of the SLA and Annex 2A are attached hereto as Exhibit A. The full text of the SLA may be found at http://www.dfait-maeci.gc.ca/eicb/softwood/pdfs/SLA-en.pdf.

termination of litigation as set forth in Annex 2A of the SLA. Among the actions enumerated in Annex 2A were this lawsuit and Tembec's NAFTA Chapter 11 arbitration claim against the United States ("Covered Actions"). At the time, Tembec's motion to vacate was fully briefed and awaiting a hearing.[2]

Tembec was not a party to the SLA, but at the request of the Government of Canada and the Government of the United States, on September 20, 2006, Tembec executed two Termination of Litigation Agreements pursuant to Annex 2A of the SLA: one for this lawsuit, and one for Tembec's NAFTA Chapter 11 claim.[3] Annex 2A of the SLA provided that the United States' representatives in each of the Covered Actions would co-sign the Termination of Litigation Agreements. The Termination of Litigation Agreements contained a provision under which each party would bear its own costs and attorneys' fees with respect to the terminated litigation.

On September 22, 2006 – just two days after Tembec executed the Termination of Litigation Agreements – the NAFTA Chapter 11 Consolidation Tribunal, on its own initiative, issued an order which said that, in light of press reports of a settlement of the Softwood Lumber dispute, it would issue an award with respect to costs.[4] The Consolidation Tribunal's January 10, 2006 order granting Tembec's voluntary termination of the arbitration – which was submitted in order to bring to this Court a motion to vacate the Tribunal's order of consolidation – reserved the right to resolve the issue of costs at a later date. The remaining parties in the consolidated

---

[2] The Court stayed this case on September 24, 2006 and requested a joint status report from the parties no later than December 22, 2006 "concerning the status of the international agreement between the United States and Canadian governments."

[3] Tembec's Termination of Litigation Agreements are attached as Exhibit B.

[4] The Tribunal's order dated September 22, 2006 is attached as Exhibit C.

proceedings (the United States, Canfor and Terminal) had completed briefing that issue in April 2006, but the Tribunal had not issued an award on costs.  The September 20 order indicated an intent to consider costs against Tembec and invited Tembec to submit a pleading with respect to costs.[5]

On October 6, 2006, Tembec informed the Consolidation Tribunal of the SLA, the Termination of Litigation Agreements that Tembec had executed at the request of the two Governments, and the provision relating to costs in those agreements. Tembec suggested that Tembec and the United States each should bear their own costs of the NAFTA Chapter 11 arbitration as provided by the SLA and the Termination of Litigation Agreements.[6]

On October 11, 2006, the two Governments presented Tembec with another version of SLA Annex 2A, entitled a "Settlement of Claims Agreement," and demanded that Tembec sign it the same day.  The new Settlement of Claims Agreement retained the language about each party bearing its own costs and attorneys' fees, but did not make specific reference to Tembec's NAFTA Chapter 11 Claim. Tembec was not given an explanation for this new document, and its counsel's protests about the lack of explanation were ignored by the Governments.[7]  At the Governments' insistence, Tembec executed this additional document.  At the time that Tembec

---

[5] The parties to NAFTA proceedings – including Tembec – had made deposits against costs.  The Consolidation Tribunal's order was for the purpose of collecting unpaid costs and the assessment of attorneys' fees, but was proposing to redistribute the costs that had already been paid for the proceedings by the parties, after the Governments had announced a settlement of the claims that included an agreement on costs and fees.  It is difficult to attribute an innocent motive to the Tribunal (particularly when President Bush's cousin sits as a Tribunal member).

[6] Letter of October 6, 2006, from Elliot J. Feldman to Tribunal is attached as Exhibit D.

[7] See Letter of October 11, 2006 from Elliot J. Feldman to Hugh Cheetham, DFAIT, and Jeff Weiss of USTR, and "Settlement of Claims Agreement", attached as Exhibit E.

executed this document, it reasonably believed that it was supplemental to, and not in place of, the earlier Termination of Litigation Agreements.

At 5:42 p.m. on October 12, 2006, the United States and Tembec reached agreement to dismiss this action "with prejudice, subject to the terms and conditions of the Softwood Lumber Agreement of 2006." The exchange of emails between counsel make it clear that the "subject to" provision was intended to be a condition on and modify "with prejudice."[8]

At 11:00 p.m. on October 12, 2006, the United States and Canada announced 19 pages of amendments to the SLA that the Governments entered into without consulting with or obtaining the agreement of Tembec ("SLA Amendments").[9] Article I of the amendments replaced the Termination of Litigation Agreements with the Settlement of Claims Agreement, and effectively removed the provision that each party bear its own costs and attorneys' fees with respect to Tembec's Chapter 11 claim. No one had warned Tembec of this proposed amendment or asked its agreement, and no one then or since has explained the reason for it.

On October 13, 2006, the United States informed the Consolidation Tribunal that Tembec had attempted to "mislead" the Tribunal by directing it to the original SLA and contending that the United States had agreed that each party would bear its own costs and attorneys' fees.[10] The United States submitted to the Tribunal the SLA Amendments and took the position that Tembec should bear the entire costs,

---

[8] Series of emails between Elliot J. Feldman, counsel to Tembec, and Alexander Haas, counsel to the United States, on October 12, 2006, attached as Exhibit F.

[9] The SLA Amendments are attached hereto as Exhibit G.

[10] The United States' statement was disingenuous because only the September 20, 2006 SLA, without the SLA Amendments, existed on October 6, 2006 when Tembec informed the Consolidation Tribunal that the parties agreed to bear their own costs and fees of the arbitration proceedings.

including the United States' attorneys' fees, with respect to Tembec's NAFTA Chapter 11 arbitration proceedings.

When Tembec queried the Government of Canada, on October 16, 2006, about the United States' demand for costs and attorneys' fees from the Consolidation Tribunal, the Government spokesman said that it understood Tembec and Canfor would be treated equally and that the United States' demand for costs and attorneys' fees was inconsistent with the SLA.

On November 3, 2006, the United States informed the Consolidation Tribunal that it had reached agreement with Canfor that each party would bear its own costs and attorneys' fees.[11]

On November 7, 2006, the Secretary of the Tribunal informed counsel to Tembec by telephone that the Tribunal would invite Tembec to respond to the United States' latest pleading on costs and ordered a hearing on the costs issue for November 15, 2006.

Tembec has been left in the position of litigating, before the very Tribunal it has accused of bias and overreaching, the issue of costs that it was led to believe by the United States and Canada had been resolved through the SLA. The United States informed Tembec of the change in SLA terms subsequent to Tembec's signature on the stipulation filed with this Court. That stipulation was conditioned on terms that, according to the United States, no longer apply.

---

[11] *See* Letter of November 3, 2006 from Andrea J. Menaker to the Tribunal, attached hereto as Exhibit H.

# ARGUMENT

I.  **The Stipulation Of Dismissal Was Subject To The Terms Of The SLA, But The Terms Of The SLA Were Changed Without Tembec's Agreement Or Knowledge**

Tembec's motion to vacate should be reinstated, allowing Tembec to continue with its NAFTA Chapter 11 claims against the United States. The Stipulation of Dismissal states that this action shall be dismissed "with prejudice, subject to the terms and conditions of the Softwood Lumber Agreement of 2006." The "subject to" language was a negotiated condition of the dismissal. Tembec insisted upon the condition in case the SLA was not executed or not executed in the form in which it had been disclosed to Tembec when it signed the Stipulation of Dismissal. The condition has not been satisfied because the United States and Canada amended the SLA in a manner material to Tembec as the amendment apparently is interpreted by the United States.

The United States has claimed to the Consolidation Tribunal that the conditions for the SLA's entry into force are different from those conditions to which Tembec initially agreed in connection with the parties' Stipulation of Dismissal in this case. The United States is seeking costs and attorneys' fees for the NAFTA Chapter 11 arbitration proceedings, despite the provisions in the SLA and Termination of Litigation Agreements that no party shall seek costs and fees from another in connection with the terminated litigation. The stipulation to dismissal of this case was conditional, subject to the terms of the SLA as known to Tembec when it signed. Tembec has not agreed to a change in the terms of the SLA that would allow the United States to seek fees and costs against Tembec for the NAFTA Chapter 11 arbitration.

Tembec, therefore, withdraws its agreement to dismiss this action. This withdrawal of the Stipulation of Dismissal is pursuant to the very terms of the stipulation, which make it subject to an SLA that no longer exists and never became effective. On this basis, the Court should order the motion to vacate reinstated.

II.     Tembec Alternatively Moves For Relief From The Dismissal Order Pursuant To Rule 60(b) Based On The United States' Misrepresentation And Misconduct Regarding The Applicable Terms Of The SLA

Tembec also is entitled to withdraw its Stipulation of Dismissal pursuant to Rule 60(b), F.R.Civ.P. because Tembec was misled by the Government of the United States and the Government of Canada regarding the applicable terms of the SLA.

A.     Rule 60(b)(3) Standard Of Review

Rule 60(b) provides for relief from a final judgment for "misrepresentation, or other misconduct of an adverse party" or for "any other reason justifying relief from the operation of the judgment." Rule 60(b)(3) and (6). Proof of misrepresentation or misconduct must be shown by clear and convincing evidence, *See Shepherd v. American Broadcasting Cos.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995), but the movant need not prove that the misconduct was intentional. *See Canady v. Erbe Elektromedizin GMBH*, 99 F.Supp.2d 37, 49 n. 26 (D.D.C. 2000). The court must balance "the interest in justice with the interest in protecting the finality of judgments." *Summers v. Howard University*, 374 F.3d 1188, 1193 (D.C. Cir. 2004). The movant must demonstrate actual prejudice from the misrepresentation or misconduct, and the Court has discretion to grant the motion. *See id.*

- 7 -

Tembec submits this motion in the alternative to the Court "within a reasonable time" of the judgment entered.  Not even a month has passed since the Court entered judgment pursuant to the stipulation of the parties in this case.[12]

B.     Tembec Was Misled As To The Applicable Terms Of The SLA

The Government of the United States misled Tembec to believe that no party could or would claim reimbursement of costs or attorneys' fees with respect to any of the softwood lumber litigation terminated pursuant to the SLA.  As evidenced by the timing of events surrounding the SLA amendments and the timing of the Stipulation of Dismissal required by the United States, the terms of the SLA and the terms for terminating litigation were changed after Tembec executed the Stipulation of Dismissal without notice to Tembec and without its agreement on a key material point.

Tembec had agreed to terminate this action and its NAFTA Chapter 11 arbitration claim, based in significant part on the terms of the SLA, which stated that no party would seek to hold any other party liable with respect to the costs and fees of the terminated litigation.  Tembec would be prejudiced were the United States allowed to seek costs and fees in connection with the NAFTA Chapter 11 arbitration proceeding while this case was dismissed.  Tembec would be foreclosed from pursuing the merits of its NAFTA Chapter 11 claims on terms to which it did not agree.  Moreover, Tembec would be litigating the issue of costs and fees before the very tribunal it challenged for bias and overreaching.  It would be effectively subjected to a decision of the Consolidation Tribunal dismissing for lack of jurisdiction the claims of Canfor and Terminal when Tembec was not present in the proceedings.  A favorable decision from

---

[12] A Rule 60(b)(3) motion must be made "not more than one year after the judgment, order, or proceeding was entered or taken."

this Court on Tembec's motion to vacate was always essential to the continuation of Tembec's NAFTA Chapter 11 claims.

The two Governments pulled a last minute "bait-and-switch" of the SLA's Annex 2A documents and, after obtaining Tembec's stipulation to dismissal, the United States has claimed that the Termination of Litigation Agreements previously executed by Tembec were invalid, and misconstrued an ambiguity in the new documents in order to return to the Consolidation Tribunal seeking to recover fees and costs from Tembec. The United States has agreed not to seek any costs or fees against Canfor Corp., another Canadian lumber company whose NAFTA Chapter 11 claims had been consolidated with Tembec's, yet the United States has construed the SLA amendments differently as to Tembec.

The United States' actions are inconsistent with the terms pursuant to which Tembec stipulated dismissal, and even were that inconsistency an unintended consequence of the last minute amendments – which Tembec doubts – unintentional misconduct is sufficient ground for the Court to reinstate this case.

Respectfully submitted,

_____/s/_____

Elliot J. Feldman (D.C. Bar No. 418501)
Mark A. Cymrot (D.C. Bar No. 164673)
Michael S. Snarr (D.C. Bar No. 474719)
BAKER & HOSTETLER LLP
1050 Connecticut Ave. N.W.
Suite 1100
Washington D.C. 20036-5304
Tel: (202) 861-1679
Fax: (202) 861-1783
*Counsel for Petitioners*

Dated: November 8, 2006