UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEMBEC INC., *et al.*, | ) |
| Petitioners, | ) |
| v. | ) Civil Action No. 07-1905 (RMC) |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

By filing this suit, Tembec Inc., Tembec Investments Inc., and Tembec Industries Inc. ("Tembec") attempts the proverbial second bite of the apple. Tembec petitions to vacate an arbitration award, attempting to relitigate matters determined in a 2005 case before this Court. The United States seeks to dismiss. Because this case is barred by res judicata and collateral estoppel, the Court will grant the motion to dismiss.

### I. FACTS

Tembec filed its first petition to vacate arbitration award on December 5, 2005. *See Tembec Inc. v. U.S.*, No. 05-2345 (D.D.C. Dec. 5, 2005) [Dkt. #1] ("First Petition"). The First Petition challenged orders issued by a tribunal constituted under Article 1126 of the North American Free Trade Agreement ("NAFTA Tribunal"). The NAFTA Tribunal consolidated three arbitration actions brought against the United States under Chapter Eleven of NAFTA by Canadian softwood lumber producers Tembec, Canfor Corporation ("Canfor"), and Terminal Forest Products Ltd. ("Terminal").[1] The First Petition challenged (1) the September 2005 consolidation order entered by

---

[1] Because U.S. timber interests believed that Canadian companies were "dumping" cheap timber into U.S. markets, the U.S. Department of Commerce and the International Trade

the NAFTA Tribunal; (2) the selection of the members of the NAFTA Tribunal; and (3) the NAFTA Tribunal's jurisdiction over Tembec's NAFTA claim. *See* First Pet. ¶¶ 8-13.

On September 12, 2006, while the First Petition was pending, the United States and Canada entered into the Softwood Lumber Agreement ("SLA") in order to resolve the underlying dispute regarding duties imposed on softwood lumber. The SLA included a Settlement of Claims Agreement ("SCA").[2] Tembec received $242 million in connection with the SLA. *See* Resp.'s Mot. to Dismiss ("Resp.'s Mot."), Ex. D Joint Order on the Costs of Arbitration.

In the meantime, counsel for the United States and Tembec had been negotiating possible dismissal of the First Petition, and on October 12, 2006, Tembec and the United States filed a stipulation of dismissal, agreeing to dismiss the First Petition "with prejudice, subject to the terms and conditions of the Softwood Lumber Agreement of 2006." *Tembec*, No. 05-2345, Stipulation of Dismissal [Dkt. # 25] (hereinafter "Stipulation of Dismissal").[3]

The day after the approval of the Stipulation of Dismissal, the United States took the position before the NAFTA Tribunal that Tembec should bear the entire cost of Tembec's NAFTA

---

Commission imposed various costs on Canadian imported soft woods through a series of antidumping, countervailing duty, and other determinations. Tembec, Canfor, and Terminal challenged such determinations by filing NAFTA Chapter Eleven claims.

[2] Originally, a condition precedent to the SLA was the execution of a "Termination of Litigation Agreement" ("TLA") by all parties to the "Covered Actions" identified in the TLA. The TLA was set forth in Annex 2A of the SLA. When it became apparent to Canada and the United States that the condition precedent would not be met by the target effective date for the SLA, the two governments negotiated modifications to the SLA. As a result, the TLA was replaced with a more limited Settlement of Claims Agreement ("SCA") that addressed the termination of only four actions, including Tembec's 2005 suit on the First Petition. Tembec's NAFTA Chapter Eleven claim was not listed.

[3] The Court approved the Stipulation by Minute Order filed October 17, 2006.

Claim, including the United States' attorney fees and costs, according to the rules of the NAFTA Tribunal. Tembec objected and in this Court sought to set aside the Stipulation of Dismissal and reinstate the First Petition. Tembec asserted that it was entitled to such relief under Rule 60(b)(3) because it had been misled by the United States. On April 19, 2007, this Court denied Tembec's request to set aside the Stipulation of Dismissal, finding no evidence that the United States knowingly misled Tembec and no basis to reopen the case. *See Tembec Inc. v. U.S.*, No. 05-2345, 2007 WL 1169346, at *2 (D.D.C. Apr. 19, 2007). This Court held, "[t]he Stipulation of Dismissal, the SLA, and the SCA are clear and unambiguous; they do not preclude the United States from seeking fees and costs against Tembec related to Tembec's NAFTA Claim." *Id*. at * . Tembec did not appeal.

After four rounds of written submissions and a hearing, on July 19, 2007, the NAFTA Tribunal entered an award requiring Tembec to pay attorney fees and costs to the United States in the amount of $271,844.24 and to pay costs to Canfor and Terminal in the amount of $32,628.15 each (the "Costs Award").[4] *See* Resp.'s Mot., Ex. D Joint Order on the Costs of Arbitration at 89-90. On October 19, 2007, Tembec commenced this suit by filing another petition to vacate an arbitration award. *See* Pet. to Vacate Arbitration Award [Dkt. # 1] ("Second Petition"). Like the First Petition, the Second Petition challenges the NAFTA Tribunal's September 2005 consolidation order, the selection of the members of the NAFTA Tribunal, and the NAFTA Tribunal's jurisdiction over Tembec's NAFTA claim. *See* Second Pet. ¶¶ 10-16. The Second Petition also seeks to vacate the Costs Award, asserting that under the SLA the United States agreed to terminate pending litigation, including Tembec's NAFTA Chapter Eleven claim, without costs or fees to be claimed by any party.

---

[4] The Costs Award was released to Tembec on August 2, 2007.

*See id*. ¶¶ 21-24.  The United States now has filed a motion to dismiss, asserting that the Second Petition is barred by res judicata and collateral estoppel.

## II.  MOTION TO DISMISS STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

A court must treat the complaint's factual allegations — including mixed questions of law and fact — as true, drawing all reasonable inferences in the plaintiff's favor.  *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *see also Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, No. 07-7105, 2008 U.S. App. LEXIS 9627, at *14 (D.C. Cir. Apr. 29, 2008) (under Rule 12(b)(6), "a court must construe a complaint liberally in the plaintiff's favor, accepting all of the allegations in the complaint as true, even if doubtful in fact") (citing *Twombly*, 127 S. Ct. at 1965).  Even so, the facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1965, and the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.  *Aktieselskabet*, 2008 U.S. App. LEXIS 9627, at *19 n.4; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In deciding a 12(b)(6) motion, the Court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take

judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted).

### III. ANALYSIS

**A. Res Judicata**

Under the doctrine of *res judicata*, also known as claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979); *Apotex Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004). "*Res judicata* plays a central role in advancing the 'purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions.'" *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana*, 440 U.S. at 153-54. In short, the doctrine embodies the principle "that a party who once has had a *chance* to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so." *SBC Comms. Inc. v. FCC*, 407 F.3d 1223, 1229 (D.C. Cir. 2005) (quoting the Restatement (Second) of Judgments ch. 1 at 6 (1982)).[5] In sum, the four *res judicata* elements traditionally applied

---

[5] The D.C. Circuit has "embraced the Restatement (Second) of Judgments' pragmatic, transactional approach to determining what constitutes a cause of action" for *res judicata* purposes. *U.S. Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 (D.C. Cir. 1985). "In addressing the cause-of-action question, the Restatement speaks in terms of a transaction or series of transactions and gives 'weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Id.* (quoting the Restatement (Second) of Judgments § 23(2) (1982)). The Restatement approach reflects the trend requiring a plaintiff to present in one suit all claims for relief that he may have arising out of the same transaction or occurrence. *Id.*

by this Court are: (1) an identity of parties; (2) a judgment from a court of competent jurisdiction; (3) a final judgment on the merits; and (4) an identity of the cause of action. *See, e.g.*, *Am. Forest Res. Council v. Shea*, 172 F. Supp. 2d 24, 29 (D.D.C. 2001); *see also U.S. Indus.*, 765 F.2d at 205.

Tembec contends that res judicata does not apply to the Second Petition because it seeks to vacate the Costs Award, a "new and different award never previously before the Court." Pet.'s Opp'n at 1. Specifically, Tembec argues that res judicata bars claims that were decided or could have been decided in a prior lawsuit, and that Tembec could not have challenged the July 19, 2007 Costs Award in the 2005 suit because the Costs Award was issued after the Stipulation of Dismissal and after this Court's denial of Tembec's Rule 60(b) motion.

Res judicata applies where there is an identity of the causes of action, *Am. Forest Res. Council*, 172 F. Supp. 2d at 29, *i.e.*, where the cases are based on the "same nucleus of facts." *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984). Res judicata bars Tembec from relitigating the issues regarding the NAFTA Tribunal's September 2005 consolidation order, the selection of the members of the NAFTA Tribunal, and the NAFTA Tribunal's jurisdiction over Tembec's NAFTA claim because these precise issues were raised in the First Petition and the First Petition was dismissed with prejudice pursuant to the parties' Stipulation of Dismissal. There was a final judgment on the merits in the 2005 suit — a stipulation of dismissal with prejudice under Federal Rule of Civil Procedure 41(a)(1) is a final adjudication on the merits that bars future suits based on the same cause of action. *Samuels v. N. Telecom, Inc.*, 942 F.2d 834, 836-37 (2d Cir. 1991). While Tembec could have litigated these claims in the 2005 suit, instead it chose to settle the dispute and receive $242 million. Tembec cannot bring suit on these same issues here. It is not relevant that the First Petition challenged the NAFTA Tribunal's authority to award fees and costs and the Second

Petition challenges the actual Costs Award. Notably, the Second Petition does not seek to modify or amend the amount of fees and costs. It seeks to vacate the Costs Award based on the very same nucleus of facts raised in the First Petition, contending that the NAFTA Tribunal's consolidation order was invalid, that the NAFTA Tribunal panel itself was improperly constituted, and that the NAFTA Tribunal lacked jurisdiction. Further, although the NAFTA Tribunal did not enter the Costs Award until after the October 2006 Stipulation of Dismissal, the NAFTA Tribunal specifically reserved the issue of fees and costs in January of 2006, nine months before the joint Tembec/U.S. Stipulation of Dismissal. *See* Resp.'s Mot., Ex. D Joint Order on the Costs of Arbitration at 11.[6]

### B. Collateral Estoppel

Under the doctrine of collateral estoppel, or issue preclusion, an issue of fact or law that was actually litigated and necessarily decided is conclusive in a subsequent action between the same parties or their privies. *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Yamaha Corp. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992). Like res judicata, collateral estoppel relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, prevents inconsistent decisions, and encourages reliance on adjudication. *Montana*, 440 U.S. at 153-54.

Tembec protests the application of collateral estoppel, asserting that none of the issues

---

[6] The cases Tembec cites in support of its argument are not on point. In each case, the plaintiff did not file a second suit based on the same nucleus of facts as an earlier case, but instead dealt with circumstances that did not exist at the time of the earlier claim. *See, e.g.*, *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327-28 (1955) (plaintiffs were not barred from bringing another antitrust suit against the same party based on anticompetitive conduct that occurred after the first case was dismissed); *Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997) (plaintiff was not barred by res judicata from bringing a new lawsuit based events that occurred after the judgment in the earlier cases). A claim for attorney fees is not a claim separate and apart from the claims of the underlying suit just because the claim for attorney fees arises later. *U.S. Indus.*, 765 F.2d at 206.

raised in the Second Petition was ever actually litigated and necessarily decided in the 2005 case on the First Petition, because the 2005 case was dismissed by stipulation. Tembec overlooks the fact that certain issues actually *were* litigated and decided in the 2005 case, *i.e.*, those issues that related to Tembec's Rule 60(b) motion. In the Second Petition, Tembec asserts that the Costs Award was barred by the SLA, that the United States misrepresented that the SLA barred such an award, and misrepresented that the United States would not seek such an award. These very issues actually were litigated and necessarily decided by this Court when it denied Tembec's Rule 60(b) motion in the 2005 case. The Court held that the United States did not misrepresent the terms of the SLA, the SCA, or the Stipulation of Dismissal, that the United States had not misled Tembec, and that the SLA did not prevent the United States from seeking the Costs Award.[7]  *See Tembec*, 2007 WL 1169346, at *2.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant the motion to dismiss filed by the United States [Dkt. # 7]. A memorializing order accompanies this Memorandum Opinion.

Date: August 14, 2008                                /s/
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge

---

[7] Tembec argues that the United States may not assert issue preclusion because the SCA provided that the Agreement was "without prejudice to the position of any party" to the SCA "on any issue in any action referenced" in the SCA. Resp.'s Mot., Ex. E SCA ¶ 9. Tembec cites no authority in support of this interpretation of the contract. Moreover, such an interpretation of the SCA is unfounded. The purpose of the SCA was to provide final settlement. Further, the SCA expressly prohibited any party from refiling the suits settled by the Agreement, *see id.*, Ex. E SCA ¶ 10, which is precisely what Tembec has done here.